**RECORD NO. 14-1407**

In The

# United States Court Of Appeals For The Fourth Circuit

## BRYAN L. ATWOOD,

*Plaintiff – Appellant,*

**v.**

## CERTAINTEED CORPORATION, a
## Delaware Corporation authorized to transact business in the State of Virginia,

*Defendant – Appellee.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
AT ALEXANDRIA**

————————————

**BRIEF OF APPELLANT**

————————————

Frederick D. Greco
GRECO & GRECO, P.C.
1300 Old Chain Bridge Road
McLean, VA  22101
(703) 821-2777

*Counsel for Appellant*

*Gibson*Moore Appellate Services, LLC
421 East Franklin Street  ♦  Suite 230  ♦  Richmond, VA  23219
804-249-7770  ♦  www.gibsonmoore.net

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __14-1407__    Caption: __Atwood v. Certainteed Corporation__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Bryan Atwood__
(name of party/amicus)

_____

 who is _____Appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?  ☐ YES ☑ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO
      If yes, identify all such owners:

4.      Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐ YES ☑ NO
        If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)    ☐ YES ☑ NO
        If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?    ☐ YES ☑ NO
        If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Frederick D. Greco _____     Date: _____ May 12, 2014 _____

Counsel for: Bryan Atwood, Appellant _____

# CERTIFICATE OF SERVICE
***************************

I certify that on _____ May 12, 2014 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Matthew D. Foster, Esquire
Pepper Hamilton
600 Fourteenth St., NW
Washington DC 20005
fosterm@pepperlaw.com

/s/ Frederick D. Greco _____          _____ May 12, 2014 _____
        (signature)                                              (date)

- 2 -

# **TABLE OF CONTENTS**

**PAGE:**

TABLE OF AUTHORITIES ................................................................. iii

STATEMENT OF JURISDICTION ........................................................1

STATEMENT OF ISSUES ...................................................................1

STATEMENT OF CASE .......................................................................2

    Background and Pleadings ................................................................2

SUMMARY OF ARGUMENTS ..........................................................11

ARGUMENT .......................................................................................12

    I.     STANDARD OF REVIEW ...............................................12

    II.    ATWOOD'S IDEAS AND INVENTIONS WERE NOT ONE ENTITY KNOWN AS 'SIERRA RAI CONCEPT' ...........................12

    III.   THERE WAS UNCONTRADICTED MATERIAL CREDIBLE EVIDENCE THAT CERTAINTEED'S EMPLOYEE, ROBERT L. JENKINS DID NOT INVENT ATWOOD'S CONCEPT NO. 1 WHICH IS PLAINTIFF'S EXHIBIT 41 ...............................................................15

    IV.   THERE WAS MATERIAL CREDIBLE EVIDENCE THAT CERTAINTEED'S EMPLOYEE, ROBERT L. JENKINS, DID NOT INVENT ATWOOD'S CONCEPT NO. 2 WHICH IS PLAINTIFF'S EXHIBIT 7, FIG. 6, ITEM 87. THIS EVIDENCE WAS SUFFICIENT TO SHOW THAT MATERIAL FACTS WERE IN DISPUTE........................................17

    V.    ATWOOD DID NOT DIVULGE TO OWENS CORNING ANY INFORMATION THAT WOULD HAVE AFFECTED HIS RIGHT TO SECRECY AND CONFIDENTIALITY OF HIS CONCEPT NO. 1 AND CONCEPT NO. 2 ........................... 18

i

VI.    CERTAINTEED'S HIGH PERFORMANCE STARTER
        SHINGLE IS NOT AN ISSUE IN THIS CASE.................................21

VII.   THE THREE U.S. PATENTS ("CORBIN", "BROCK" AND
        "ROBINSON" PATENTS) CLAIMED BY CERTAINTEED
        AND ACCEPTED BY THE TRIAL COURT AS RELEVANT
        EVIDENCE WERE IN FACT NOT RELEVANT FOR TWO
        PRIMARY REASONS .......................................................22

VIII.  ARGUMENT – SUMMATION.........................................................22

CONCLUSION .................................................................................24

REQUEST FOR ORAL ARGUMENT ................................................24

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

<u>**TABLE OF AUTHORITIES**</u>

**<u>PAGE(S)</u>:**

<u>**CASES**</u>:

<u>Hill v. Lockheed Martin Logistics Mgmt</u>,
   354 F.3d 277 (4th Cir. 2004) ............................................................................12

<u>Microstrategy, Inc., v. Business Objects SA</u> *et al*,
   331 F. Supp. 2d 396 (E.D. Va. 2004) ..............................................................20

<u>U.S. v. George</u>,
   971 F.2d 1113 (4th Cir. 1992) .......................................................................12

<u>**STATUTE**</u>:

28 U.S.C. § 2106 ....................................................................................................1

<u>**RULE**</u>:

Fed. R. Civ. P. 59(e) ........................................................................................6, 11

## STATEMENT OF JURISDICTION

This Court has jurisdiction over this appeal which is from a Final Judgment of the U.S. District Court For The Eastern District of Virginia pursuant to 28 U.S.C. § 2106.

## STATEMENT OF ISSUES

Were there issues of material fact that would preclude the Court from finding for CertainTeed?

The Trial Court ruled in its Memorandum Opinion that there were no issues of material fact that would preclude the Court from finding for CertainTeed.

The Trial Court stated and/or ruled in its Memorandum Opinion that there was no issue of material fact on the following issues:

### Issue No. One (1)

Did the Trial Court commit error when it found that Atwood's Concept was his "Sierra Rai Concept," and that it was a shingle with multiple strips of adhesive on both sides of the shingle?

### Issue No. Two (2)

Did Robert L. Jenkins (Jenkins) of CertainTeed Corporation (CertainTeed) invent the concepts set out in CertainTeed's 493 Patent, namely (Pl. Ex. 7), Figure 6, item 86 Atwood's Concept No. 1 and item 87 Atwood's Concept No. 2?

<u>Issue No. Three (3)</u>

Did Atwood disclose his Concept No. 1 to Owens Corning in any manner or basis before disclosing his Concept No. 1 to CertainTeed?

<u>Issue No. Four (4)</u>

Did Atwood disclose his Concept No. 2 to Owens Corning in a reasonable manner that, though stated that it was done on a non confidential basis, did not cause the loss of its confidentiality protection?

**<u>STATEMENT OF CASE</u>**

<u>Background and Pleadings</u>

This case is about who developed certain new concepts of roofing shingles. There are two types of shingles involved in this case, namely "Starter Shingles" and "Field Shingles". A Starter Shingle is the first shingle which is put down on the edges of a roof, the bottom edge of a roof, and its side edges. The Starter Shingle is only one row of shingles at the edge of the roof. It is covered by a Field Shingle which is used to cover the Starter Shingle and then proceed up the roof in rows until the Field Shingle cover the roof. The Starter Shingle is only one row, and the Field Shingle covers the Starter Shingle and the rest of the roof.

1.      The facts of this dispute started when Atwood spoke by telephone to Gregory Jacobs, PhD. (Jacobs) of CertainTeed, a roofing shingle manufacturer, on June 10, 2008. They spoke about setting up a meeting concerning new concepts of

roofing shingles that Atwood had developed. In the telephone conversation Atwood told Jacobs about certain limited information of his new concepts. (Pl. Ex. 9 and 10), JA pp. 673- 675 & JA p. 676). After the parties entered into two non disclosure agreements on July 31, 2008 and September 19, 2008, a meeting was arranged for October 7, 2008. (Pl. Ex.1 & 2) JA pp. 32-36 & JA. pp.37-38.

2.      At the meeting on October 7, 2008 Atwood delivered a booklet of his ideas and inventions plus three prototypes (Pl. Ex. 3 & 4). JA pp. 39-53 & JA p. 54. (One prototype was Pl's. Ex. 41) JA pp. 848-849. Exhibit 41, which has been identified as Concept No. 1 and is further identified in the 493 Patent as Ex. 7, Fig 6. Item 86. JA pp. 662-670. Another concept was Concept No. 2, which was also identified at the October 7, 2008 meeting and it was included in the 493 Patent (Pl. Ex. 7) Fig. 6, item 87. JA pp. 662-670. Atwood followed up the meeting on October 7, 2008 with a facsimile message of November 24, 2008 which communicated to CertainTeed what Atwood identified as Concept No. 3. (Pl. Ex. 5) JA pp. 55-59.

3.      The parties negotiated concerning the development of Atwood's Concepts for seventeen (17) months until March 4, 2010 when Alexander Plache, Esquire of CertainTeed, stated in an e-mail to Atwood that:

> In light of the similarity between your idea and this product which we have discontinued, our marketing department does not believe your product strategically fits with the company's current

3

business direction.  If this position changes, however, we will contact you. (Pl.'s Ex.18) JA pp. 719.

4.    The first time in any document that CertainTeed mentioned the invention, idea, and concept in Plaintiff's Concept No. 1 and Concept No. 2 was when CertainTeed filed the 493 Patent applications on September 16, 2009. Atwood had given CertainTeed these inventions, ideas and concepts on October 7, 2008 when he gave them his booklet which included a prototype which has since been marked Pl. Ex. 41. JA pp. 848-849.

5.    This current legal dispute began when Atwood saw that a certain patent (493 Patent) had been granted to CertainTeed on February 5, 2013 by the U.S. Patent Office.  Atwood asserted in early 2013 that the 493 Patent obtained by CertainTeed included information Atwood had disclosed to CertainTeed under the non disclosure agreements between the parties.  CertainTeed responded to Atwood's inquiry by sending a copy of Robert L. Jenkins' June 11, 2008 notes asserting that Jenkins had invented what Atwood claimed he had invented four months earlier than Atwood's meeting with CertainTeed on October 7, 2008.  (Pl. Exhibit 8) JA pp. 1347-1349. Jenkins was an employee of CertainTeed.  Atwood asked to have the June 11, 2008 notes examined by an expert and to talk to the people involved.  CertainTeed declined this request.  Atwood's attorney threatened litigation in an e-mail dated June 18, 2013 to have an expert examine the document and to take the depositions of various CertainTeed employees.  CertainTeed filed

the next day on June 19, 2013 a legal action for a Declaratory Judgment in the Federal Court in Philadelphia, Pennsylvania against Mr. Atwood.  In response to said legal action, Atwood objected to the jurisdiction of the Philadelphia Federal Court and filed what amounted to his counterclaim in the State of Virginia. CertainTeed removed the Virginia State case to the Federal Court in Virginia and then moved to transfer the Virginia case to the Federal Court in Philadelphia.  The Federal Court in Philadelphia, subsequent to Atwood's filing his action in Virginia, ruled that the Court in Philadelphia did not have personal jurisdiction over Atwood and dismissed CertainTeed's legal action in Philadelphia, against Atwood.  The Federal Court in Virginia then ruled the Motion to transfer the Virginia Federal Court case to Philadelphia was moot.  CertainTeed then filed its counterclaim in the Virginia Federal Court.  The counterclaim was basically the same claim for a Declaratory Judgment that CertainTeed had originally filed in Philadelphia, Pennsylvania.

6.     In both cases CertainTeed alleged that Jenkins invented the 493 Patent on June 11, 2008, as set out in his June 11, 2008 notes and that Jenkins had attached the said notes to a CertainTeed Invention Disclosure form he filed with CertainTeed on February 11, 2009.  (Pl. Ex. 11). JA pp. 677-682.

CertainTeed alleged in its counterclaim that the 493 Patent does not include or incorporate any "invention" which Atwood may have disclosed to CertainTeed. See paragraph 40-45 of CertainTeed's counterclaim. JA p.185.

7.     CertainTeed used the phrase "Sierra Rai Concept" in its Motion for Summary Judgment and incorrectly claims that phrase covers all of Atwood's inventions, concepts and ideas. The Court appears to have been influenced by this statement of CertainTeed. The Court stated on page one of its Memorandum Opinion, JA p. 1273,"Atwood's Concept is a shingle with multiple strips of adhesive on both side of the shingle." Using the phrase "Sierra Rai Concept" as it applies to this litigation, Atwood has identified three Concepts that he had submitted to CertainTeed. This was set out in Plaintiff's "CORRECTED MEMORANDUM OF LAW TO SUPPORT PLAINTIFF'S MOTION TO ALTER OR AMEND A JUDGMENT PURSUANT TO FRCP RULE 59(e)". Atwood clarified and identified each of the three (3) products and ideas as separate Concepts. They are:

**Concept (No. 1)** This is the "Starter Shingle" with adhesive strips on the bottom of both sides. This concept of Atwood's is set out in a prototype which was delivered to CertainTeed on October 7, 2008. Jacobs signed a receipt for said sample starter shingle (See Ex. 4) JA p. 54. This sample starter shingle was returned to Atwood in 2010. Counsel for CertainTeed at Atwood's deposition

6

requested a sample so it was cut in half, and one half was delivered to CertainTeed's Counsel. The original was marked Plaintiff's Exhibit 41 and was introduced, without any objection, as evidence at the Motion for Summary Judgment hearing on February 21, 2014. JA pp.1262-1265.

It was Atwood's position as stated in his oral argument at the Summary Judgment Motion hearing (JA pp. 1262-1265) that his Starter Shingle invention which is (Pl. Ex. 41) JA pp. 848-849, is not in Jenkins' June 11, 2008 invention notes (Pl. Ex. 8) JA pp. 671-672 nor is it in the Invention Disclosure form filed by Jenkins on February 11, 2009 (Pl. Ex. 11) JA pp. 677-683. The first time the concept is mentioned by Jenkins is on September 16, 2009 in the 493 Patent Pl. Ex. 7, Fig. 6, item 86. JA pp. 662-670. In the Invention Disclosure form dated February 11, 2009, Jenkins stated at pages 1-2 under E. 1. "Included also are multiple layered **starter pieces** with each separate piece having at least one adhesive or sealing location **on either** the top or bottom-side portion…" JA. pp. 677-678. Atwood's Pl. Ex. 41 JA pp. 848-849 was not only not mentioned in the initial written documents, but Jenkins described a Concept that was contrary to Atwood's Ex. 41 (Concept No. 1). Atwood's invention (Pl. Ex. 41) (Concept No. 1) has an adhesive strip on both sides and was (**not "on either"**) the top or bottom side, but both sides.

**(Emphasis added)**

7

It does not take an expert or an affidavit to show what the two documents say. (Ex. 8 and 11), JA pp. 671-672 & 677-682.  Neither of these exhibits cover or deal with Concept No. 1 that is set out in the prototype (Exhibit 41) which was submitted to the Court at the Motion for Summary Judgment Court Hearing on February 21, 2014 without any objection by CertainTeed.  JA p. 1262.

**Concept (No. 2)** This concept deals with the "Field Shingle" with multiple adhesive strips on both sides.  This concept does appear in Jenkins' June 11, 2008 notes as No. 3A.  It is Atwood's position that the evidence shows that concept No. 3A was added to Jenkins' notes at some point after the initial notes were written.  It is not known when.  The basis of this statement is shown by examining the said Jenkins' Notes.  In Jenkins' June 11, 2008 notes there are 25 items listed in the art work.  Jenkins only has one drawing of Multiple Adhesive Strips on both sides of a field shingle.  This is item 3A.  The notes clearly show 3A was added after the "19" at the bottom of the page was changed to "20".  It is Atwood's position that a visual examination of the dates on the two pages of Jenkins' June 11, 2008 notes raise significant questions about the validity of the dates sufficient to present a material issue of fact which requires it to be submitted for trial.  This statement is enhanced by examination of Pl. Ex. 15.  This Exhibit contains photographs taken by Mr. John Sang, a Forensic Document Examiner. JA pp. 197-208 also at pp. 708-718.

**Concept (No. 3)** CertainTeed showed Atwood, at some point after October 31, 2013 when his deposition was taken, and prior to Dr. Jacobs's deposition on December 19, 2013, that they already had this Concept, not in a patent, but in a product. The product is the "High Performance Starter Shingle." Atwood had submitted this idea and Concept of two adhesive strips on the front of a Starter Shingle on November 24, 2008. See Atwood's (Pl. Ex. 5) JA pp. 55-59. This shows a starter shingle with two (2) adhesive strips on the front. CertainTeed states in its counterclaim at paragraph 28 that it received a fax from Atwood on October 16, 2008. When Atwood was shown evidence of the date, CertainTeed began to sell the High Performance Starter, and he withdrew his claim. See Jacobs' deposition (Pl. Ex. 21 p. 93) JA p. 816.

8.     The 493 Patent is set out in (Pl. Ex. 7) JA pp. 662-670. The two relevant parts of the 493 Patent are as follows:

a)     An example is the 493 Patent. Plaintiff's Exhibit No. 7. Figure 6, (page column 4, line 40-45). JA pp. 662-670. There are two Concepts in Fig. 6; Concept No. 1 is a Starter Strip Shingle which is numbered 86. It is a Starter Shingle with adhesive on both sides of the bottom of the shingle. (Pl. Ex. 41). JA pp. 848-849.

b)     The other Concept, which is Concept No. 2, in Figure 6 of Ex. 7 is a Field Shingle numbered 87. It has multiple adhesives strips on both sides.

9

These two specific concepts are two of the three concepts more completely described aforesaid.

9.     CertainTeed relied on Jenkins' June 11, 2008 notes and Invention Disclosure Form dated February 11, 2009 as set out in the following documents to allege Jenkins had invented the Atwood ideas prior to Atwood.  (Pl. Ex. 8 and 11) JA pp. 671-672 & JA pp. 677-682.  This is set out in the affidavits of Gregory Jacobs, Ph.D., Patent Portfolio Process Director, JA pp.103-117 and Robert L. Jenkins, Principal Product Development Engineer, JA pp. 79-101.

10.     Plaintiff Atwood, based on facts determined in discovery found that his invention, concept and idea as set out in his Concept No. 1 (Pl. Ex. 41) JA pp. 848-849, which is a prototype of a starter shingle, is not even mentioned in Jenkins' June 11, 2008 notes or in his Invention Disclosure form filed with CertainTeed on February 11, 2009. (Pl. Ex's 8 and 11).  JA pp. 671-672 & JA pp. 677-682.

11.     Plaintiff's Concept No. 1 is a starter shingle with adhesive on both sides at the bottom of the shingle.  (Pl. Ex. 41) JA pp. 848-849.  This Exhibit 41 was submitted to the Court on February 21, 2014 at the Motion for Summary Judgment Hearing. Counsel for CertainTeed stated he had no objection. (Transcript page 17, Court Hearing pp. 17-20).   JA pp. 1262-1265.  For clarification Exhibit 41 had been identified as Concept No. 1. in the facts set out in

10

Atwood's "CORRECTED MEMORANDUM OF LAW TO SUPPORT PLAINTIFF'S MOTION TO ALTER OR AMEND A JUDGMENT PURSUANT TO FRCP RULE 59(e)".  JA pp.1286-1290.

## SUMMARY OF ARGUMENTS

The Trial Court erred in granting CertainTeed's Motion for Summary Judgment and for denying Atwood's Motion to Alter a Judgment pursuant to FRCP 59(e), for the following reasons.  The Roman numeral numbers correspond to the Table of Contents.

1.     (II) The Trial Court incorrectly accepted CertainTeed's Representations that Atwood's invention was singular and was one certain Concept known as "Sierra Rai Concept".  This is shown by the Court's statement at page 1 of the Court's Opinion Memorandum.  JA p. 1273.

> "Atwood's Concept is a shingle with multiple strips of adhesive on both sides of the shingle"

2.     (III) The Concepts set out in the 493 Patent (Ex. 7, Fig. 6 Item 86) JA pp. 662-670, were not stated or listed in Jenkins' June 11, 2008 notes (Pl. Ex. 8) or CertainTeed's, Invention Disclosure form (Pl. Ex. 11). JA pp. 671-672 & JA pp. 677-682.

3.     (IV) That the evidence shown by Plaintiff's (Ex. 8).  JA pp. 671-672, (Ex. 11)- JA pp. 677-692 and (Ex.15)  JA pp. 197-208, also at JA pp 708-718 show material credible evidence that Robert Jenkins did not invent Plaintiff's Exhibit 7,

11

Fig. 6, item 87. Said item 87 is the same as Atwood's description of his Concept No. 2.

4.      (V) Atwood never disclosed to Owens Corning his Concept No. 1 (Pl. Ex. 41). Atwood disclosure of Concept No. 2 to Owens Corning was reasonable under the circumstance, and it did not cause Atwood to loose his confidentiality rights to said Concept No. 2.

5.      (VI) Who invented the "High Performance Starter Shingle" is not an issue in this case.

6.      (VII) The three U.S. Patents "Corbin", "Bock" and "Robinson" Patents are claimed by CertainTeed and accepted by the Trial Court as relevant evidence were, in fact, not relevant.

## ARGUMENT

### I.      STANDARD OF REVIEW.

The review of the District Court's granting of summary judgment is *de novo*. Hill v. Lockheed Martin Logistics Mgmt, 354 F.3d 277, 283 (4th Cir. 2004). "By definition, de novo review entails consideration of an issue as if it had not been decided previously. U.S. v. George, 971 F.2d 1113, 1118 (4th Cir. 1992).

### II.     ATWOOD'S IDEAS AND INVENTIONS WERE NOT ONE ENTITY KNOWN AS 'SIERRA RAI CONCEPT'.

There is no one certain "Sierra Rai Concept". If CertainTeed says there is, then CertainTeed should describe what is included in the phase "Sierra Rai

12

Concept". An example is the 493 Patent. Plaintiff's Ex. No 7, Figure 6 (page column 4, line 40-45.) JA pp. 662-670. There are two Concepts in Fig. 6. One is Concept No. 1 which is a Starter Strip Shingle with adhesive on both sides of the bottom of the shingle. This is item No. 86. (Pl. Ex. 41). JA 848-849.

The other is Concept No. 2, in Fig. 6. It is a Field Shingle with multiple adhesives strips on both sides. This is item No. 87.

"Sierra Rai Concept"? Is it the Starter Strip Shingle item 86 or Field Shingle item 87? If this question cannot be answered, then CertainTeed's Motion for Summary Judgment was based on an incorrect foundation, because the Court found and stated at page one of its Memorandum Opinion "Atwood's Concept is a shingle with multiple strips of adhesive on both sides of the shingle". The Court does not mention the "Starter Shingle" which is item 86 of the 493 Patent. JA pp. 1273-1280.

It appears the Court has found that "Atwood's Concept" is a shingle with multiple strips of adhesive on both sides of the shingle. The question is does this apply to both Field Shingles and Starter Shingles? First one needs to address the fact that Starter Shingles are different from Field Shingles. This is shown in the 493 Patent (Pl. Ex 7.) Figure 6 (page column 4, line 40-45). JA p. 668. The patent explains the difference between a Starter Strip Shingle and a Field Shingle.

The difference is also stated by Robert Jenkins, the person who was the author of the June 11, 2008 invention notes.  Jenkins was questioned about his notes in his deposition.  The following are excerpts of his testimony.

Jenkins Deposition:

<u>Page 37 JA p. 985</u>.

Q.    No, not what is shown.  What I'm talking about now is the discussion that you had with Mr. Koch.

A.    The discussion was on the top side or on the back side but not on the top and the back.
      At the same time.  I missed that concept.

Q.    You did what?

A.    I said I didn't include that concept here.  I missed that.

<u>Page 57 JA p. 1005</u>

Q.    Now, with 3A you've got – it's just the first one, then.  For 3A you've got multiple adhesives on the field shingle on both sides.

A.    Of the field shingle, correct.

Q.    I think we addressed the question of having multiple on both side of the shingle, and I thought the answer was that you had not had that concept yet.

A.    We were talking about the starter –

Q.    All right.  The starter –

A.    – and we're talking about field shingles now.

Q.    So there's a distinct difference?

A.    Yes, there is.

14

It is clear that Mr. Jenkins, who CertainTeed says was the inventor, considered his invention involved two different Concepts, Starter Shingle and Field Shingle. Atwood's Concept No. 1 is the Starter Shingle and Concept No. 2 is the Field Shingle. This clearly shows that the Concept stated by the Court on the 1st page of its Order is not correct. The Court stated at page one (1) of its Memorandum Opinion, "Atwood's Concept is a shingle with multiple strips of adhesive on both sides of the shingle", JA p. 1273. Mr. Jenkins clearly states there is a difference between a Field Shingle and a Starter Shingle.

### III. THERE WAS UNCONTRADICTED MATERIAL CREDIBLE EVIDENCE THAT CERTAINTEED'S EMPLOYEE, ROBERT L. JENKINS DID NOT INVENT ATWOOD'S CONCEPT NO. 1 WHICH IS PLAINTIFF'S EXHIBIT 41.

A.    The Trial Court stated at page 6 of its Memorandum Opinion: JA p. 1278.

The invention in CertainTeed's 493 Patent was invented by CertainTeed employee Robert L. Jenkins ("Jenkins") prior to the Disclosure date. On June 10, 2008, Jenkins prepared invention Notes describing his invention for a weather resistant shingle system, including multiple adhesive points on both sides of the single.

B.    Atwood on February 21, 2014 at the Summary Judgment Motion hearing stated to the Court, in reference to Atwood's Concept No. 1, that Jenkins's June 11, 2008 Notes and his February 11, 2009 Invention Disclosure form did not mention Pl. Ex 41 which is the prototype of the Starter Shingle. Motion Transcript pages 17-20. JA pp. 1262-1265.

15

C.    Jenkins sent an e-mail dated February 16, 2009 to an employee of CertainTeed and forwarded it to Jacobs on February 27, 2009.  (Pl. Ex. 12) JA p. 683.  The e-mail sent by Jenkins on February 16, 2009, was five days after Jenkins signed the February 11, 2009 Invention Disclosure Form Exhibit 11. JA pp. 677-682.  The said e-mail stated under Subject:  "ATWOOD'S IDEAS (outside inventor) FOR WIND RESISTANT STARTER AS A ROLL PRODUCT WITH ADHESIVE ON BOTH SIDES".  This is a statement by Jenkins that Atwood invented a Starter Roll with adhesive on both sides.  There is no difference between the concept of how adhesives are applied to a Starter Roll or a Starter Shingle.  Atwood had presented his idea about the starter with adhesive strips on both sides on a Roll Shingle and also on a Starter Shingle.  This is shown by two documented examples.

a)    The January 10, 2008 e-mail sent by Jacobs to Atwood after their initial conversation when Atwood told Jacobs about  his products.  Jacobs e-mail back to Atwood  referred to **"shingle starter"** it **did not say "roll starter."  (Pl. Ex. 9) JA p. 673.**

**(Emphasis Added)**

b)    Atwood stated in Pl. Exhibit 3 that was delivered to CertainTeed on October 7, 2008 that "SR needs to be in roll form or could be made into a shingle."  JA pp. 644-645.

16

D.    CertainTeed's corporate representative testified at page 90 of his deposition: "I'm not aware of any commercial product as a patent of a starter shingle with strips of adhesive on the back side or top side together." (Jacobs Dep. page 90.) JA p. 812.

IV.    **THERE WAS MATERIAL CREDIBLE EVIDENCE THAT CERTAINTEED'S EMPLOYEE, ROBERT L. JENKINS, DID NOT INVENT ATWOOD'S CONCEPT NO. 2 WHICH IS PLAINTIFF'S EXHIBIT 7, FIG. 6, ITEM 87. THIS EVIDENCE WAS SUFFICIENT TO SHOW THAT MATERIAL FACTS WERE IN DISPUTE.**

Concept No. 2 deals with the "Field Shingle" with multiple adhesive strips on both sides. This concept does appear in Jenkins' June 11, 2008 notes as No. 3A. JA pp. 671-672. It is Atwood's position that the evidence shows that concept No. 3A was added to Jenkins' notes at some point after the initial notes were written. It is not known when. The basis of this statement is shown by examining the said Jenkins' Notes. In Jenkins' June 11, 2008 notes, there are 25 items listed in the art work. Jenkins only has one drawing of Multiple Adhesive Strips on both sides of a field shingle. This is item 3A. The notes clearly show 3A was added after the "19" at the bottom of the page was changed to "20".

In addition to the foregoing Atwood's position is that a visual examination of the dates on the two pages of Jenkins' June 11, 2008 notes raise significant question about the validity of the dates. This statement is enhanced by examination of Pl's. Ex. 15. JA pp. 197-208. This Exhibit contains photographs taken by Mr.

17

John Sang, a Forensic Document Examiner of the notes of Mr. Jenkins dated June 11, 2008.  It is suggested that examination of Exhibit 15 is clearer if done on the computer at JA. Pp. 197-208.  It is argued that the circumstantial evidence is sufficient to present a material issue of fact which requires it to be submitted for trial.

## V.     ATWOOD DID NOT DIVULGE TO OWENS CORNING ANY INFORMATION THAT WOULD HAVE AFFECTED HIS RIGHT TO SECRECY AND CONFIDENTIALITY OF HIS CONCEPT NO. 1 AND CONCEPT NO. 2:

A.     Atwood stated in his Affidavit (Pl. Ex 56) JA pp. 1389-1393 that he did not show or make Owens Corning aware in any way his Concept No 1, set out in Pl. Ex. 41. JA pp. 848-849.

B.     The Court stated at page 5: "Atwood disclosed his Concept to CertainTeed's competitor, Owens Corning, on a non-confidential basis five months before disclosing his Concept to CertainTeed.  Atwood's non-confidential disclosure to Owens Corning belies any claim that what he provided to CertainTeed on October 7, 2008 was secret or confidential."

C.     The actual facts show that this finding of fact is incorrect.

First the Court states:

"Atwood disclosed his Concept to CertainTeed's competitor Owens Corning, on a non-confidential basis five months earlier."

18

Which one of the two prior listed Concepts, 1 or 2 did the Court find that

Atwood disclosed?  Atwood has stated under oath that he did not give Concept No.

1 (Ex. 41), which is, in the 493 Patent Fig. 6 item 86, to Owens Corning. JA pp.

1389-1393.  The only information he gave them was Plaintiff's Exhibit 43 and five

photographs.  Exhibit 43 did not mention Atwood's Concept No. 1 (Exhibit 41)

and the photographs did not include Atwood's Concept No. 1. Atwood's

Declaration. (Pl. Ex. 56) JA pp. 1389-1393.  Atwood asserts that his actions

regarding Concept No. 2 was reasonable under the circumstances because of the

action of DeWitt Enterprises as set out in Atwood's Declaration.  Initially Atwood

had refused to send his information to Owens Corning, because they would not

agree in writing to keep it confidential.  After DeWitt, which had signed a

confidentiality agreement, said they (DeWitt) had reached an agreement with

Owens Corning to sell Atwood's Invention to Owens Corning.  Atwood then took

steps to protect his interest.  This action by DeWitt did not include Concept No. 1

(Exhibit 41) because this Concept was not shown to DeWitt.  This action by

DeWitt dealt with Atwood's Concept No. 2.  Atwood then stopped dealing with

DeWitt.  Atwood then confronted Owens Corning.  Owens Corning denied any

knowledge of the product or of dealing with DeWitt regarding the matter.  Atwood

would not have sent the limited information, which did not include Pl. Ex 41, to

Owens Corning except for the Owens Corning denial.  Once Owens Corning

received the limited information, they did not have to keep it confidential, but they could not use it unless they reached an agreement with Atwood.  Atwood argues that this gave him more protection than what he had, and that his actions were a reasonable attempt to protect the confidentiality of the information he had given DeWitt.  DeWitt was not given any information about Atwood's Concept No. 1 (Exhibit 41).  If Owens Corning used the information it received from Atwood about Concept No. 2, since they had denied they received it from Dewitt, they would have had to receive it from Atwood.  In which case they would have to pay Atwood for its use.  The fact Owens Corning did not have to keep the information confidential did not give Owens Corning the right to use it commercially.  Owens Corning did not divulge the confidential information to anyone who took action on it, because CertainTeed obtained a patent (493 Patent) Exhibit 7, Fig. 6 item 87 (Concept No. 2).  This is the same information that Atwood gave to Owens Corning.  JA pp. 1389-1393.

The Court in <u>Microstrategy, Inc., v. Business Objects SA <i>et al</i></u>, 331 F. Supp. 2d 396 (E.D. Va. 2004) after dealing with the specifics of its case, the Court stated one of the general principles at page 416:

> "Finally, only reasonable efforts must be taken to maintain secrecy. Restricting access to information, implementing confidentiality agreements and providing physical barriers to access are all reasonable efforts".

Atwood asserts that actual events showed that his action was reasonable under the circumstances.  The photographs and Exhibit 43 were shown in 2008 to Owens Corning, and Owens Corning took no action.  CertainTeed in 2013 obtained a patent on the concept set out in the 493 Parent Fig. 6 item 87.

Exhibit 43 does not mention or cover Atwood's Concept No. 1, and the photographs did not show Plaintiff's Exhibit 41 (Concept No. 1).  Exhibit 41 (Concept No. 1) was only shown to CertainTeed and Tamko.  Atwood's Declaration (Pl. Ex. 56).  JA pp. 1389-1393.

It is submitted that Atwood's actions concerning Concept No. 2 being disclosed to Owens Corning were reasonable under the circumstances. If one assumes that DeWitt had disclosed Atwood's confidential information to Owens Corning, after Atwood dealt with Owens Corning, Owens Corning could not use the said confidential information without having reached an agreement with Atwood for compensation.

Additional legal support for Atwood's legal position is set out in more detail in Atwood's prior memorandum at DKT 84, pages 7-11.  JA pp.1328-1334.

## VI.   CERTAINTEED'S HIGH PERFORMANCE STARTER SHINGLE IS NOT AN ISSUE IN THIS CASE.

The Court stated at page 7 of its Memorandum Opinion that:

> "Atwood's claims that this Concept disclosed to CertainTeed on October 7, 2008 is embodied in CertainTeed's High Performance Starter Shingle."

21

The High Performance Starter Shingle is the same as Atwood's Concept No.

3.  Atwood discarded this claim, as shown in Jacobs' deposition on December 19,

2013 when Atwood's counsel stated that  CertainTeed's counsel had explained this

matter.  JA p. 816.

## VII.  THE THREE U.S. PATENTS ("CORBIN", "BROCK" AND "ROBINSON" PATENTS) CLAIMED BY CERTAINTEED AND ACCEPTED BY THE TRIAL COURT AS RELEVANT EVIDENCE WERE IN FACT NOT RELEVANT FOR TWO PRIMARY REASONS.

The Court at page 6 of its Memorandum Opinion stated how these three

patents had the same concepts as Atwood's concepts and thus was a bar to

Atwood's claim. JA p. 1278.

First, Atwood's Concept No. 1 is a starter shingle and the three listed patents

were field shingles.

Second, if these three patents were not a bar to CertainTeed's 493 Patent

which contained Atwood's Concept No. 1 and Concept No. 2, they would not have

been a bar to Atwood's Concepts.  They were not a bar to CertainTeed's 493

Patent, Fig. 6, items 86 & 87 and would not have been a bar to Atwood's Concept

No. 1 or Concept No. 2 which are the same items as 86 & 87.

## VIII.  ARGUMENT – SUMMATION

It is asserted by Atwood that there are three separate clear reasons in this

case to set aside the Judgment.  It is asserted any one of these three reasons is an

example of error by the Trial Court that requires the Judgment of the Trial Court to be set aside and the case remanded for trial.

1.      The Court at page one based its position on a factual ruling that Atwood had one concept, the Sierra Rai Concept, which was a shingle with multiple strips of adhesive on both sides of the shingle.  If this is Atwood's Concept, then the Court never considered Plaintiff's Exhibit 41 which is a Starter Shingle with a single strip of adhesive on both sides.  The Field Shingle which is Plaintiff's Concept No. 2 has multiple adhesive strips on both sides.

2.      CertainTeed relied on Jenkins June 11, 2008 notes and his filing of CertainTeed's Invention Disclosure form of February 11, 2009 to support its claim that Jenkins invented Plaintiff's Concept No. 1 (Pl. Exhibit 41) prior to Attwood. An examination of both of these documents shows the Starter Shingle that Atwood asserts was his idea (Concept No. 1) is not mentioned or shown in these documents that CertainTeed and the Court relied on.

3.      The Court found that Atwood's invention was disclosed to Owens Corning prior to disclosure to CertainTeed.  The evidence is that Atwood's Concept No. 2 was disclosed to Owens Corning.  Concept No. 1 (Pl. Exhibit 41) was not disclosed.    There are no facts to support the claim that Concept No. 1, Exhibit 41 was disclosed to Owens Corning.  JA pp. 1389-1393.  The

reasonableness of the disclosure of Concept No. 2, item 87 is also a material fact that needs to be resolved by a fact finding hearing.

It is asserted by Bryan L. Atwood, Appellant, that there are many factual questions that are still present in this case, which support his position, but it is unnecessary to specifically consider them.  The foregoing three stated reasons each show that the Judgment should be set aside and the case remanded for trial.

## CONCLUSION

For the foregoing reasons, Bryan L. Atwood, Appellant, requests that the District Court granting of CertainTeed Corporation Motion for Summary Judgment be reversed and this case remanded to the District Court for Trial.

## REQUEST FOR ORAL ARGUMENT

Bryan L. Atwood, Appellant, hereby requests that his counsel be allowed to argue this matter orally before the Court.

This the 23rd day of June 2014.

/s/Frederick D. Greco
Frederick D. Greco (VSB # 4812)
fdgreco@grecogrecolaw.com
GRECO & GRECO, P.C.
1300 Old Chain Bridge Road
McLean, Virginia  22101
Telephone (703) 821-2777
Facsimile (703) 893-9377

*Counsel for Appellant,*
*Bryan L. Atwood*

24

## UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

### CERTIFICATE OF COMPLIANCE WITH RULE 32(a)
Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

1.  This brief complies with the type-volume limitation of Fed. R. App. P.
    32(a)(7)(B) because:

        this brief contains 5,522 words, excluding the parts of the brief
        exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P.
    32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

        this brief has been prepared in a proportional spaced typeface using
        Microsoft Word in 14 point Times New Roman.

                                              /s/Frederick D. Greco
                                              Frederick D. Greco (VSB # 4812)

                                              *Counsel for Appellant*


Dated:  June 23, 2014

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on June 23, 2014, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

Matthew D. Foster
PEPPER & HAMILTON, LLP
Hamilton Square
600 14th Street, NW
Suite 500
Washington, DC  20005
(202) 220-1235

*Counsel for Appellee*

Sean P. McConnell
M. Kelly Tillery
PEPPER & HAMILTON, LLP
3000 Two Logan Square
18th & Arch Streets
Philadelphia, PA  19103
(215) 981-4252

*Counsel for Appellee*

The necessary filing and service were performed in accordance with the instructions given to me by counsel in this case.

/s/  Shelly N. Gannon
Shelly N. Gannon
GIBSON MOORE APPELLATE SERVICES, LLC
421 East Franklin Street
Suite 230
Richmond, VA  23219