**RECORD NO. 14-1407**

In The

# United States Court Of Appeals For The Fourth Circuit

## BRYAN L. ATWOOD,

*Plaintiff – Appellant,*

v.

## CERTAINTEED CORPORATION,
### a Delaware Corporation authorized to transact business in the State of Virginia,

*Defendant – Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
AT ALEXANDRIA

————————

## BRIEF OF APPELLEE

————————

M. Kelly Tillery
Sean P. McConnell
PEPPER & HAMILTON LLP
3000 Two Logan Square
18th & Arch Streets
Philadelphia, PA 19103
(215) 981-4351

Matthew D. Foster
PEPPER & HAMILTON LLP
Hamilton Square
600 14th Street, NW
Suite 500
Washington, DC 20005
(202) 220-1235

*Counsel for Appellee*

*Counsel for Appellee*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __14-1407__        Caption: __Bryan L. Atwood, Appellant v. CertainTeed Corporation, Appellee__

Pursuant to FRAP 26.1 and Local Rule 26.1,

CertainTeed Corporation
(name of party/amicus)

_____

who is _____Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?    ☑ YES ☐ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:
      Compagnie de Saint-Gobain

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☑ YES ☐ NO
      If yes, identify all such owners:
      Wendel SA, owns over 10% of Compagnie de Saint-Gobain, which is the ultimate parent of CertainTeed Corporation.

10/28/2013 SCC        - 1 -

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐ YES ☑ NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐ YES ☑ NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐ YES ☑ NO
    If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Matthew D. Foster _____    Date: ___ May 7, 2014 ___

Counsel for: CertainTeed Corporation _____

# CERTIFICATE OF SERVICE
***************************

I certify that on ___ May 13, 2014 ___ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Frederick D. Greco
GRECO & GRECO, P.C.
1300 Old Chain Bridge Road
McLean, VA 22101
Tel: (703) 821-2777
Fax: (703) 893-9377
Email: fdgreco@grecogrecolaw.com

/s/ Matthew D. Foster _____        ___ May 13, 2014 ___
(signature)                                    (date)

- 2 -

# <u>TABLE OF CONTENTS</u>

**PAGE:**

TABLE OF AUTHORITIES ................................................................v

I.     JURISDICTION ......................................................................1

II.    STATEMENT OF ISSUES .......................................................1

III.   STATEMENT OF CASE .........................................................2

STATEMENT OF THE FACTS ...................................................5

A.     CertainTeed's Invention and U.S. Patent No. 8,365,493 ("the '493 Patent")........................................................5

B.     CertainTeed and the '493 Patent ...................................7

C.     CertainTeed's High Performance Starter Shingle.................8

D.     Atwood's Alleged "Confidential Information" ("Sierra Rai Concept")......................................................8

E.     Interactions Between Atwood and CertainTeed ..................9

F.     Atwood's Claims...................................................10

G.     Atwood's Contact with Third Parties Regarding His Sierra Rai Concept...................................................10

     1.     MFM Building Products Corporation......................10

     2.     The Protecto Wrap Company...............................11

     3.     DeWitt Products Company ................................11

     4.     Owens Corning .........................................11

5.   IKO Midwest, Inc. ....................................................................12

6.   TAMKO Building Products, Inc..............................................13

H.   Atwood's Unsuccessful Efforts to Develop His Sierra Rai Concept........................................................................................13

I.   Atwood's Damages Claim .........................................................14

J.   Prior Art U.S. Patents ...............................................................14

IV.   SUMMARY OF ARGUMENT ...................................................................15

V.   ARGUMENT ...............................................................................................18

STANDARDS OF REVIEW.......................................................................18

A.   Reviewing a District Court's Granting of Summary Judgment..........18

B.   The Standard of Review for Summary Judgment ...............................19

C.   Reviewing a Rule 59(e) Motion to Alter or Amend a Judgment........21

DISCUSSION OF THE ISSUES ................................................................23

A.   What Atwood Has Failed to Argue, He Has Now Abandoned...........23

B.   Atwood's New Arguments Raised After Summary Judgment Are Waived......................................................................................24

C.   The Elements Required for Atwood's Trade Secret and Breach of Contract Claims Are Identical .......................................................25

1.   VUTSA Claim........................................................................26

2.   Breach of the NDA Claim......................................................27

D.      There is No Evidence of Any Material Issue of Fact – Atwood's "Confidential Information" Is His Sierra Rai Concept .......................28

E.      Atwood's New "Multiple Concepts Theory" Is Waived and, If Not Waived, Still Creates No Issue of Material Fact..........................30

F.      Atwood's Sierra Rai Concept Was Not a "Trade Secret" or "Confidential" When Atwood Disclosed It to CertainTeed On the Disclosure Date ................................................................................33

        1.      The Non-Confidential Disclosure of Atwood's Sierra Rai Concept to Owens Corning Prior to the Disclosure Date .........35

                a.      Atwood's Argument Regarding the Purported Differences Between What He Disclosed to Owens Corning and CertainTeed Contradicts the Indisputable Facts ............................................................38

                b.      Atwood's Contention Regarding the Reasonableness of his Non-Confidential Disclosure to Owens Corning Runs Counter to Law and Common Sense ................................................43

        2.      There Is No Doubt CertainTeed Invented the '493 Patent Prior to the Disclosure Date ......................................................46

                a.      CertainTeed's Invention of Its ''493 Patent Prior to the Disclosure Date..........................................................47

                b.      The "Sang Report" Concludes Nothing About When the Jenkins June 2008 Invention Notes Were Created ........................................................................48

        3.      Atwood's Sierra Rai Concept Had Been Widely Known to the Roofing Industry for Years Prior to the Disclosure Date ...............................................................................................51

                a.      Atwood's Attempt to Differentiate Starter/Field Shingle is Inconsequential ...............................................54

4.  Atwood's Admission Regarding CertainTeed's High Performance Starter Shingle Evidence Atwood's Sierra Rai Concept Was Known to the General Public Long Prior to the Disclosure Date ........................................56

G.  Atwood Has No Evidence of Damage or Any Other Recoverable Relief ............................................................57

1.  Atwood Has No Actual Damages ..............................................58

2.  CertainTeed Has Not Been Enriched In Any Way ..................60

3.  There Can Be No "Reasonable Royalties" On Non-Existent Sales Of A Non-Existent Product ..............................61

4.  Punitive Damages and Attorneys' Fees are Unavailable ..........63

5.  "Injunctive Relief" is Not Appropriate For a Concept That is No Longer Secret or Where Such Relief Runs Counter to Public Interest ..........................................................63

VI.  CONCLUSION ..............................................................................65

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**PAGE(S):**

## CASES:

*Am. Sales Corp. v. Adventure Travel, Inc.*,
862 F. Supp. 1476 (E.D. Va. 1994) ..............................................................62

*American Air Filter, Inc. v. McNichol*,
527 F.2d 1297 (3d Cir. 1975) ......................................................................60

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) ........................20, 46

*Atwood v. CertainTeed Corp.*,
Case No. 13-1906 ........................................................................................8

*Auto Channel, Inc. v. Speedvision Network, LLC*,
144 F. Supp. 2d 784 (W. D. Ky. 2001) ........................................................36

*Autopartsource, LLC v. Bruton*,
No. 13-54, 2013 U.S. Dist.
LEXIS 99396 (E.D. Va. July 16, 2013) ...........................................58, 60, 64

*Beale v. Hardy*,
769 F.2d 213 (4th Cir. 1985) ...........................................................20, 32, 46

*Bondpro Corp. v. Siemens Power Generation, Inc.*,
463 F.3d 702 (7th Cir. 2006) ......................................................................51

*Burteen v. Milton Bradley Co.*,
592 F. Supp. 1021 (D.R.I. 1984)
*reversed on other grounds*,
763 F.2d 461 (1st Cir. 1985).......................................................................36

*Castillo v. Emergency Med. Assocs., P.A.*,
372 F.3d 643 (4th Cir. 2004) ......................................................................18

*Celotex Corp. v. Catrett*,
477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) ........................20, 21

*Charbonnages de France v. Smith*,
597 F.2d 406 (4th Cir. 1979) ..............................................................16, 18

*Collison v. International Chem. Workers Union*,
34 F.3d 233 (4th Cir. 1994) ....................................................................21

*Commercial Union Ins. Co. v. Charleston Marine Leasing Co.*,
No. 94-1563, 1995 U.S. App.
LEXIS 8762 (4th Cir. Apr. 17, 1995)........................................................22

*Conference Archives, Inc. v. Sound Images, Inc.*,
No. 3:2006-76, 2010 U.S. Dist.
LEXIS 46955 (W.D. Pa. Mar. 31, 2010)................................................27, 51

*Consol. Coal Co. v. Local 1702, United Mineworkers of Am.*,
683 F.2d 827 (4th Cir. 1982) ..............................................................17, 34

*Crown Indus., Inc.*,
335 F. Supp., 749 (N.D. Ill. 1971)........................................................36, 52

*Davis v. General Motors Corp.*,
No. 73-1302, 1977 U.S. Dist.
LEXIS 15246 (N.D. Ill. June 27, 1977) ....................................................52

*EEOC v. Lockheed Martin Corp., Aero & Naval Sys.*,
116 F.3d 110 (4th Cir. 1997) ..................................................................21

*Fishkin v. Susquehanna Partners, G.P.*,
No. 03-3766, 2007 U.S. Dist.
LEXIS 19621 (E.D. Pa. Feb. 12, 2007)......................................................60

*Grenier v. Cyanamid Plastics, Inc.*,
70 F.3d 667 (1st Cir. 1995)......................................................................19

*Harmon v. Bunch*,
No. 3:10cv759, 2011 U.S. Dist.
LEXIS 66235 (E.D. Va. Jun. 16, 2011)........................................................5

*Haywood v. Univ. of Pittsburgh*,
   No. 11-1200, 2013 U.S. Dist.
   LEXIS 140263 (W.D. Pa. Sep. 30, 2013 ................................................ 27, 28

*Hill v. Braxton*,
   277 F.3d 701 (4th Cir. 2002) ...................................................................... 21

*Hills Holliday Connors Cosmospulos, Inc. v. Greenfield*,
   433 Fed. Appx. 207 (4th Cir. 2011) ................................................ 36, 38, 44

*Hutchinson v. Staton*,
   944 F.2d 1076 (4th Cir. 1993) .................................................................... 22

*IGEN Int'l, Inc. v. Roche Diagnostics GmbH*,
   335 F.3d 303 (4th Cir. 2003) ...................................................................... 23

*Jackson v. Kimel*,
   992 F.2d 1318 (4th Cir. 1993) .................................................................... 19

*James v. Jacobson*,
   6 F.3d 233 (4th Cir. 1993) .......................................................................... 21

*Kairgadam v. Bell Atlantic Corp.*,
   46 Fed. Appx. 194 (4th Cir. 2002) ......................................... 19, 24, 31, 43

*Kearns v. Ford Motor Co.*,
   No. 8-70740, 1978 U.S. Dist.
   LEXIS 16686 (E.D. Mich. July 11, 1978) .......................................... 36, 44

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986) ............................ 20

*Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*,
   674 F.3d 369 (4th Cir. 2012) .............................................................. 16, 23, 64

*McShea v. The City of Philadelphia*,
   995 A.2d 334 (Pa. 2010) .............................................................................. 63

*MicroStrategy, Inc. v. Business Objects, S.A.*,
   331 F. Supp. 2d 396 (E.D. Va. 2004) .................................................... 44, 45

*Mosaica Academy Charter Sch. v. Commonwealth Dept. of Educ.*,
   813 A.2d 813 (Pa. 2002) .................................................................................63

*Nickelson v. General Motors Corp.*,
   361 F.2d 196 (7th Cir. 1966) .......................................................................52

*Nova Chemicals, Inc. v. Sekisui Plastics, Inc.*,
   579 F. 3d 319 (3d Cir. 2009) .......................................................................36

*Othentec, Ltd. v. Phelan*,
   526 F.3d 139 (4th Cir. 2008) ...................................................18, 19, 20, 46

*Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*,
   148 F.3d 396 (4th Cir. 1998) ................................................................21, 22

*Penalty Kick Mgmt. Ltd. v. Coca Cola Co.*,
   318 F.3d 1284 (11th Cir. 2003) ...................................................................52

*Perini Corp. v. Perini Constr. Inc.*,
   915 F.2d 121 (4th Cir. 1990) .......................................................................18

*Ross v. Communications Satellite Corp.*,
   759 F.2d 355 (4th Cir. 1985) .................................................................18, 19

*Sapuppo v. Allstate Floridian Ins. Co.*,
   739 F.3d 678 (11th Cir. 2014) .....................................................................34

*Secure Servs. Tech., Inc. v. Time and Space Processing, Inc.*,
   722 F. Supp. 1354 (E.D. Va. 1989) .................................................36, 38, 44

*Service & Training, Inc. v. Data Gen. Corp.*,
   963 F.2d 680 (4th Cir. 1992) .......................................................................19

*Shirey v. City of Alexandria Sch. Bd.*,
   No. 99-1127, 2000 U.S. App.
   LEXIS 21236 (4th Cir. Aug. 23, 2000) .................................................22, 31

*Staples v. Assurance Co. of Am.*,
   No. 1088, 2004 Phila. Ct. Com. Pl.
   LEXIS 50 (Phila. Ct. Com. Pl. Jun. 14, 2004) .............................................63

*Stone v. Liberty Mut. Ins. Co.*,
        105 F.3d 188 (4th Cir. 1997) ................................................................... 19-20

*Stratienko v. Cordis Corp.*,
        429 F.3d 592 (6th Cir. 2005) .........................................................................37

*Sweet Street Deserts, Inc. v. Chudleigh's Ltd.*,
        No. 12-3363, U.S. Dist.
        LEXIS 49283 (E.D. Pa. Apr. 4, 2013)...........................................................57

*Trident Prods. and Servs., LLC v. Canadian Soiless Wholesale, Ltd.*,
        859 F. Supp. 2d 771 (E.D. Va. 2012).....................................................26, 60

*U.S. ex rel. Becker v. Westinghouse Savannah River Co.*,
        305 F.3d 284 (4th Cir. 2002) .........................................................................22

*U.S. v. Lavabit, LLC (In re Under Seal)*,
        749 F.3d 276 (4th Cir. 2014) .........................................................................34

*Vaughner v. Pulito*,
        804 F.2d 873 (5th Cir. 1986) .........................................................................19

*Ware v. Rodale Press, Inc.*,
        322 F.3d 218 (3d Cir. 2003) .....................................................................27, 59

*Whitehouse v. Corner*,
        No. 1:10cv1020, 2012 U.S. Dist.
        LEXIS 19229 (E.D. Va.  Feb. 14, 2012) ........................................................5

*Wood v. Morequity, Inc.*,
        331 Fed. Appx. 243 (4th Cir. 2009) ..............................................................22

*Young Design, Inc. v. Teletronics Int'l, Inc.*,
        No. 970, 2001 U.S. Dist.
        LEXIS 21851 (E.D. Va. July 31, 2001) ..................................................35, 51

**STATUTES:**

28 U.S.C. § 2106 .................................................................................1

Va. Code § 59.1-336 ....................................................................26, 60

Va. Code § 59.1-337 ...........................................................................63

Va. Code. § 59.1-337(A).....................................................................64

Va. Code. § 59.1-338(A)....................................................... 58, 60, 61-62

Va. Code § 59.1-338(B)......................................................................63

Va. Code § 59.1-338.1 ........................................................................63

**RULES:**

Fed. R. Civ. P. 56(c)...........................................................................19

Fed. R. Civ. P. 56(e)......................................................................*passim*

L.R. 56(B) ...........................................................................................5

**OTHER:**

11 Wright, Miller and Kane,
*Federal Practice and Procedure* § 2810.1 (3d Ed. 2012) .......................................22

Appellee, CertainTeed Corporation ("CertainTeed"), through Counsel, respectfully submits its Response in Opposition to Appellant, Bryan L. Atwood's ("Atwood") Brief in Support of his Appeal ("Atwood's Brief").

## I.      JURISDICTION

This Court has jurisdiction over this Appeal from a final judgment of the U.S. District Court for the Eastern District of Virginia pursuant to Title 28 U.S.C. § 2106.

## II.      STATEMENT OF ISSUES

The issues relevant to this Appeal are:

1. Is there any evidence of record to show there is a material issue of fact in dispute about Atwood's disclosure of his "Confidential Information" ("Sierra Rai Concept" or "Concept") to CertainTeed's Competitor, Owens Corning, on a specific non-confidential basis prior to Atwood disclosing the same concept to CertainTeed?

2. Is there any evidence of record to show there is a material issue of fact in dispute about the invention of U.S. Patent No. 8,365,493 ("the '493 Patent") by CertainTeed employee, Robert L. Jenkins, prior to Atwood disclosing his Sierra Rai Concept to CertainTeed?

-1-

3. Is there any evidence of record to show there is a material issue of fact in dispute about the existence of at least three prior U.S. Patents disclosing the essential elements of Atwood's Sierra Rai Concept prior to Atwood disclosing his Concept to CertainTeed?

4. Is there any evidence of record to show there is a material issue of fact in dispute about CertainTeed's sale of its High Performance Starter Shingle prior to Atwood disclosing his Sierra Rai Concept to CertainTeed?

5. Is there any evidence of record to show there is a material issue of fact in dispute about Atwood having no damages and no ability to prove damages?

6. Was the District Court's denial of Atwood's Motion to Alter or Amend Judgment (the "Rule 59(e) Motion") an abuse of discretion?

## III.  **STATEMENT OF CASE**

On September 18, 2008, CertainTeed and Atwood entered into a Non-Disclosure Agreement ("NDA") as a preface to Atwood disclosing his Sierra Rai Concept to CertainTeed on October 7, 2008 ("Disclosure Date").  JA 32-38.  The Parties discussed the possibility of, but never entered into a development

agreement regarding his Sierra Rai Concept.  In March 2010, CertainTeed informed Atwood it was not interested in his Sierra Rai Concept.  JA 719.

On July 16, 2013, Atwood filed a Complaint in the Circuit Court of Arlington, County, Virginia, claiming CertainTeed violated the Virginia Uniform Trade Secrets Act ("VUTSA") (Count I) and breached the terms of the NDA (Count II) by:  (a) disclosing and using Atwood's Sierra Rai Concept in an Application for the '493 Patent and (b) disclosing/using Atwood's Sierra Rai Concept to develop, use, and sell new roofing products.[1]  JA 18-78.  On August 15, 2013, CertainTeed removed the case to the U.S. District Court for the Eastern District of Virginia, which was assigned to the Honorable Claude M. Hilton, Senior Judge.  JA 12-17.

Following discovery, CertainTeed moved for Summary Judgment ("CertainTeed's Motion"), arguing the incontrovertible evidence established all of the following (any one of which would defeat both of Atwood's Claims):

> (1) Atwood disclosed his Sierra Rai Concept to CertainTeed's second largest competitor, Owens Corning, pursuant to a written NON-CONFIDENTIAL agreement five months prior to the Disclosure Date;
>
> (2) The Invention in the '493 Patent was invented by CertainTeed on June 10, 2008, four months prior to the Disclosure Date;

---

[1] Atwood has since withdrawn his claim of "use" and now only claims CertainTeed improperly "disclosed" his Sierra Rai Concept.  DKT 13, pp. 8.

(3) Three published U.S. Patents contain the material elements of Atwood's Sierra Rai Concept and <u>predate</u> the Disclosure Date by years;

(4) The CertainTeed product Atwood claims contains his Concept has been on sale for years <u>prior</u> to the Disclosure Date; <u>and</u>

(5) Atwood had and could prove no damages.

JA 214-255.

On March 5, 2014, the District Court granted CertainTeed's Motion on the first four grounds, finding Atwood's Sierra Rai Concept was <u>not</u> "secret" or "confidential" when he disclosed it to CertainTeed. JA 1273-1280. The District Court did not address Atwood's lack of evidence of damages. *Id.*

Atwood moved the District Court to Alter or Amend its Judgment under Fed. R. Civ. P. 59(e), but failed to cite any change in the law or newly discovered evidence. JA 1281-1303. Instead, Atwood raised new arguments and restated the same arguments made in opposition to the Motion for Summary Judgment. *Id.* On April 4, 2014, the District Court denied the Rule 59(e) Motion. JA 1407.

Atwood appeals both the Grant of Summary Judgment and the Denial of the Rule 59(e) Motion.

## STATEMENT OF THE FACTS

The material facts set forth below supporting CertainTeed's Motion are not in dispute. JA 225-35. In opposing CertainTeed's Motion, Atwood either failed to rebut CertainTeed's proposed undisputed facts all together, or simply rebutted certain proposed undisputed facts without citing evidence to support the rebuttal.[2] JA 614-23.

### A.    CertainTeed's Invention and U.S. Patent No. 8,365,493 ("the '493 Patent")

On June 10, 2008, an Inventor and Principal Product Development Engineer for CertainTeed's Exterior Products Group/Roofing Products Group, Robert L. Jenkins, invented an improved weather and wind resistant roofing shingle ("Weather Resistant Shingle"). JA 80, 84-85, 287-89. The same day, Mr. Jenkins prepared a two-page, hand-written document describing the shingle he invented ("Jenkins June 2008 Invention Notes"). JA 287-89, 527, 542-44. Mr.

_____

[2] In the United States District Court for the Eastern District of Virginia, proposed undisputed facts are deemed admitted unless the non-moving party properly disputes these facts with specific evidence cited to in the record. *See* Fed. R. Civ. P. 56(e); L.R. 56(B); *Whitehouse v. Corner*, No. 1:10-cv-1020, 2012 U.S. Dist. LEXIS 19229, *3-4, n. 2 (E.D. Va. Feb. 14, 2012) (disputed facts considered undisputed where plaintiff failed to properly address the defendant's assertions of fact); *Harmon v. Bunch*, No. 3:10-cv-759, 2011 U.S. Dist. LEXIS 66235, *20-23 (E.D. Va. Jun. 16, 2011) (disputed facts deemed admitted where disputes based only on non-moving party's beliefs and assertions and failed to include citations to the record).

Jenkins had no knowledge of Mr. Atwood or his Sierra Rai Concept when he prepared the Jenkins June 2008 Invention Notes.  JA 273-74, 281-84, 297-98.

The next day, on June 11, 2008, Mr. Jenkins disclosed his Weather Resistant Shingle to CertainTeed colleagues, James C. Brandt, Jr. and Stephen A. Koch.  JA 268-70, 288-90, 301-05.  Mr. Brandt read and signed the Jenkins June 2008 Invention Notes to confirm his understanding of Mr. Jenkins' Invention and Mr. Jenkins' signing and dating of his notes "6-11-2008."  *Id.*

The Jenkins June 2008 Invention Notes were not altered or changed any time after they were created on June 10, 2008 and witnessed on June 11, 2008. JA 288.

On February 11, 2009, Mr. Jenkins prepared and signed a CertainTeed Corporate Invention Disclosure Form for his Weather Resistant Shingle, attaching a copy of the Jenkins June 2008 Invention Notes.  JA 81, 86-92, 291-92.  On April 30, 2009, the Invention Disclosure Form, containing a copy of the signed Jenkins June 2008 Invention Notes was logged into CertainTeed's internal computer system.  JA 104-05, 109-17, 273.

On September 16, 2009, CertainTeed's outside patent counsel, John McNulty, Esquire, filed U.S. Patent Application No. 12/560,724 based solely on Jenkins' Invention Disclosure Form, containing the Jenkins June 2008 Invention

Notes, and without any knowledge of Atwood or his Sierra Rai Concept. JA 210, 308-313. This Application matured to Registration as the '493 Patent. JA 210.

**B.   CertainTeed and the '493 Patent**

CertainTeed has never manufactured any product embodying the Invention described in its '493 Patent. JA 527. CertainTeed has never marketed or offered to sell any product embodying the Invention described in its '493 Patent. *Id.* CertainTeed has never sold a product embodying the Invention described in its '493 Patent. JA 528. CertainTeed has no present plans to manufacture a product embodying the Invention described in its '493 Patent. *Id.* CertainTeed has no present plans to market or sell a product embodying the Invention described in its '493 Patent. *Id.* CertainTeed has not practiced or implemented the Invention described in its '493 Patent because other advancements in shingle adhesives are now more efficient, effective, and economical to produce. *Id.*

CertainTeed has never licensed its '493 Patent. JA 528. CertainTeed has never offered to license its '493 Patent. *Id.* CertainTeed has never received a request to license or purchase its '493 Patent. *Id.*

CertainTeed has not taken any legal action to enforce its rights under its '493 Patent. JA 528. CertainTeed is unaware of any third party that is infringing, has infringed, or is threatening to infringe its '493 Patent. *Id.*

CertainTeed has not valued its '493 Patent. JA 528. CertainTeed is unaware of anyone who has valued its '493 Patent. *Id.* CertainTeed's '493 Patent has no quantifiable monetary value. *Id.*

**C.    CertainTeed's High Performance Starter Shingle**

CertainTeed sells a wide variety of roofing products, including the "High Performance Starter Shingle" that CertainTeed has been manufacturing and selling continuously since 2001. JA 210, 529.

**D.    Atwood's Alleged "Confidential Information" ("Sierra Rai Concept")**

Atwood claims his "Confidential Information" is a "self-adhesive starter shingle" with "adhesive on the back of the shingle" and "multiple strips of adhesive," "on both sides of the shingle," "all the way across the shingle," "on both sides of the shingle." JA 319-20, 324-32, 429. In sum, <u>a shingle with multiple strips of adhesive on both sides of the shingle</u>. JA 341, 367-75, 431-38. On July 16, 2013, Atwood, through Counsel, voluntarily disclosed what he calls his Sierra Rai Concept in a public court filing, in his Complaint against CertainTeed filed in the Circuit Court for Arlington County, Virginia, *Atwood v. CertainTeed Corp.*, Case No. 13-1906. JA 39-59.

**E.**     **Interactions Between Atwood and CertainTeed**

On September 18, 2008, Atwood and CertainTeed entered into two Non-Disclosure Agreements, entitled "Mutual Nondisclosure Agreement" and "Agreement for Exhibition of Unpatented Invention to Prospective Purchaser" (collectively, "NDA") regarding Atwood's Sierra Rai Concept, copies of which are attached as Exhibits 1 and 2 to Atwood's Complaint. JA 32-38, 529, 574-82. The two Agreements are merged and are read as one Agreement. JA 35, 37. Atwood did not disclose any Confidential Information about his Sierra Rai Concept to CertainTeed at any time prior to the September 18, 2008 signing of the NDA. JA 382, 529.

On October 7, 2008, in a meeting with Mr. Jenkins and Gregory Jacobs, CertainTeed's Patent Portfolio Process Director, Atwood disclosed his Sierra Rai Concept for the first time to CertainTeed. JA 22, 292, 297-98, 380-82, 420-21, 530. From October 7, 2008 to March 2010, Atwood and CertainTeed discussed the possibility of entering into an agreement regarding the joint development of Atwood's Sierra Rai Concept. JA 530. On March 4, 2010, CertainTeed's in-house counsel, Alexander Plache, informed Atwood, via email, that CertainTeed was not interested in Atwood's Sierra Rai Concept as it did not fit within CertainTeed's current business direction. JA 530, 583-85.

F.    **Atwood's Claims**

Atwood claims his Sierra Rai Concept is embodied in the Jenkins June 2008 Invention Notes.  JA 24-25, 419-22.  Atwood claims his Concept is embodied in CertainTeed's '493 Patent.  JA 23-24, 28, 364-68, 375-78.  Atwood also claims his Sierra Rai Concept is embodied in CertainTeed's High Performance Starter Shingle.  JA 346-48, 350-51.  Atwood does not claim his Concept is embodied in any other CertainTeed Product.  JA 408.

G.    **Atwood's Contact with Third Parties Regarding His Sierra Rai Concept**

Atwood contacted a number of third parties to discuss possible development of his Sierra Rai Concept.  JA 333-39, 352-54.

1.    **MFM Building Products Corporation**

On October 17, 2007, Atwood entered into a Secrecy Agreement with MFM Building Products Corporation, of Coshocton, Ohio ("MFM").  JA 454-56.  Atwood provided a package of materials to MFM describing his Sierra Rai Concept, which contained pretty much the same documents he provided to CertainTeed.  JA  339.  On January 11, 2008, MFM informed Atwood "there was not much interest" in his idea from people in the industry and Atwood's "best bet [was] to try and find another manufacturer."  JA 359-60.  On January 16, 2008, MFM informed Atwood he was free to seek another partner for his project.  JA 461-62.

### 2.    The Protecto Wrap Company

On March 4, 2008, Atwood entered into a Confidentiality Agreement with The Protecto Wrap Company, of Denver, Colorado ("Protecto Wrap").   JA 355, 457-58.   Atwood discovered Protecto Wrap only sold nonslip surface products, which ended the discussions with Protecto Wrap.  JA 355.

### 3.    DeWitt Products Company

On March 8, 2008, Atwood entered into a Confidentiality Agreement with DeWitt Products Co. of Detroit, Michigan ("DeWitt").  JA 439-440.  Atwood provided a package of materials to DeWitt describing his Sierra Rai Concept, which contained pretty much the same documents he provided to CertainTeed.  JA 339.   DeWitt informed Atwood it was no longer interested in his Sierra Rai Concept because of the cost to produce the product and because DeWitt realized one of its partners may have a patent on the same type of product.  JA 446-47.

### 4.    Owens Corning

Owens Corning is CertainTeed's second largest competitor in the roofing industry in the United States.  JA 531.  In March 2008, Atwood contacted Owens Corning to discuss his Sierra Rai Concept.  JA 509-511. On March 13, 2008, Owens Corning sent an email to Atwood containing an "Unsolicited Disclosure Letter" Atwood would be required to sign before Owens Corning would consider Atwood's ideas.  JA 512-14.

On May 6, 2008, Atwood's Counsel sent a letter to Jason Fokens, Esquire, In-House Counsel for Owens Corning, inquiring if Owens Corning had any interest in his Sierra Rai Concept. JA 518-19. On May 13, 2008, Mr. Fokens sent Atwood's Counsel a copy of Owens Corning's Unsolicited Disclosure Letter, informing Atwood's Counsel that Owens Corning would require Atwood to sign the letter before it would discuss any idea with him on a non-confidential basis. JA 520-22.

On May 16, 2008, with Atwood's permission, Atwood's Counsel sent Mr. Fokens the authorization page for the Unsolicited Disclosure Letter (including a provision that it was on a non-confidential basis) signed by Atwood and a package with materials describing Atwood's Sierra Rai Concept. JA 448-453, 523-25. On June 4, 2008, Mr. Fokens sent a letter to Atwood stating that, after reviewing Atwood's proposal, the idea fell outside Owens Corning's current business interests. JA 526.

### 5.    IKO Midwest, Inc.

In September 2007, Atwood contacted IKO Midwest, Inc. of Kankakee, Illinois ("IKO") in order to see if IKO would be interested in his Sierra Rai Concept. JA 463-466. Atwood did not enter into any confidentiality or non-disclosure agreement with IKO and did not send any package of materials describing his Sierra Rai Concept to IKO. JA 356-57. In March 2008, Andy

Lodge, Technical Director for IKO, informed Atwood IKO's experience is that unless a product is patented, IKO prefers not to get involved, as the concept has/is already been/being developed by IKO, or is known in the industry.  JA 469.

### 6.    TAMKO Building Products, Inc.

On April 26, 2010, Atwood entered into a Mutual Non-Disclosure Agreement with TAMKO Building Products, Inc. of Joplin, Missouri ("TAMKO").  JA 443-45.  Atwood provided a package of materials to TAMKO describing his Sierra Rai Concept, which contained pretty much the same documents Atwood provided to CertainTeed.  JA 355.  On June 21, 2010, TAMKO informed Atwood it was not interested in entering an agreement regarding his Sierra Rai Concept.  JA 355-56, 441-42.

Atwood's package describing his Sierra Rai Concept sent to CertainTeed and the other roofing product manufacturers included a detailed a written description of his Concept and photographs demonstrating his Sierra Rai Concept actually installed on two roofs.  JA 39-48.

### H.    Atwood's Unsuccessful Efforts to Develop His Sierra Rai Concept

As of the date of CertainTeed's Motion, no third party had refused to do any of the following because of CertainTeed or its '493 Patent: (1) talk with Atwood about his Sierra Rai Concept; (2) contract with Atwood regarding his Sierra Rai Concept; (3) enter into a license agreement with Atwood regarding his

-13-

Sierra Rai Concept; (4) enter into a joint development agreement with Atwood regarding his Sierra Rai Concept; (5) manufacture a product embodying Atwood's Sierra Rai Concept; or (6) market or sell a product embodying Atwood's Sierra Rai Concept.  JA 398-99.  To date, no third party has produced a product embodying Atwood's Sierra Rai Concept.  JA 408-09.

## I.    Atwood's Damages Claim

Atwood did not identify any damages expert during the underlying proceeding.  JA 162, 168, 410-13.  Atwood never filed a Patent Application for his Sierra Rai Concept.  JA 357-60, 395-97.  Atwood has never been denied a Patent for his Sierra Rai Concept because of CertainTeed or its '493 Patent.   JA 357-60, 395-97.  Atwood has not independently manufactured or sold a product embodying his Sierra Rai Concept.  JA 360-62, 398-99.  Atwood has not licensed his Sierra Rai Concept.  JA 362-63, 398-99.

## J.    Prior Art U.S. Patents

U.S. Patent No. 3,434,259 for a "Roofing Shingle" issued and published on March 25, 1969 ("Corbin Patent"), and was available to the general public at least 39 years prior to the Disclosure Date.  JA 530, 586-90.  The Corbin Patent discloses multiple adhesive strips on the front/upper surface of a shingle in Figure 1, Nos. 24 and 26 (col. 3, lns. 1-16) and multiple adhesive strips on the back

surface of a shingle in Figure 4, Nos. 52 and 56 (col. 3, lns. 60-73). JA 530, 586-90.

U.S. Patent No. 4,856,251 for a "Self-Gauging, Anti-Ice Damming, Double Sealed Shingle System" issued and published on August 15, 1989 ("Buck Patent"), and was available to the general public at least 18 years prior to the Disclosure Date (October 7, 2008). JA 530, 591-97. The Buck Patent discloses a shingle with multiple adhesive zones on the lower surface of the shingle in Figure 2, Nos. 108 and 111 <u>and</u> on the upper surface of the shingle in Figure 2, Nos. 112 and 117 (col. 3, lns. 18-33). JA 530, 591-97.

U.S. Patent No. 5,239,802 for "Adhesive Arrangement for Shingles and the Like" issued and published on August 31, 1993 ("Robinson Patent"), and was available to the general public prior to the Disclosure Date (October 7, 2008). JA 531, 598-605. The Robinson Patent discloses a shingle with multiple lines of adhesive on the front/top of a shingle in Figure 3, Nos. 18 and 20 (col. 3, lns. 34-47) <u>and</u> multiple lines of adhesive along the bottom/back portion of the shingle in Figures 5 and 6, Nos. 24 and 26 (col. 4, lns. 35-50). JA 531, 598-605.

## IV.     <u>SUMMARY OF ARGUMENT</u>

CertainTeed is entitled to Summary Judgment on all five grounds raised in its Motion. Each is supported by uncontradicted and incontrovertible

evidence, and is an independent reason why Judgment dismissing Atwood's Claims is appropriate.

The first four of these grounds establish Atwood's Sierra Rai Concept was <u>not</u> a secret as of the Disclosure Date. Secrecy is the *sine qua non* of any Trade Secret or Breach of Confidentiality Agreement Claim. Without a protectable Trade Secret or Confidential Information, CertainTeed could not have disclosed Atwood's Sierra Rai Concept in violation of the VUTSA or in breach of the NDA. The District Court agreed with CertainTeed on all four of these grounds.

The fifth ground was that Atwood had not been damaged and had no provable damages. Without any damages, Atwood's Claims also fail and Summary Judgment dismissing these claims is warranted. Although the District Court did not address Atwood's lack of damages, this Court is not constrained from independently making such a determination. *See Charbonnages de France v. Smith*, 597 F.2d 406, 416 (4th Cir. 1979).

Atwood's Brief only addresses the first four findings made by the Court regarding the purported secrecy of Atwood's Sierra Rai Concept. Atwood ignores the fifth ground, and thus, any argument to the contrary is waived. *See Mayfield v. Nat'l. Ass'n. for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 377 (4th Cir. 2012).

Atwood must identify specific evidence of record sufficient to raise a material issue of fact on each and every one of these five grounds to defeat summary judgment. By comparison, this Court need only find that no evidence exists of record to raise a material issue of fact as to just one of the five grounds to affirm summary judgment. *See Consol. Coal Co. v. Local 1702, United Mineworkers of Am.*, 683 F.2d 827, 831-32 (4th Cir. 1982).

Atwood fails to identify even one single piece of evidence which would establish an issue of <u>material</u> fact on any of the five issues which would preclude Summary Judgment. Atwood does not claim or identify <u>any</u> legal error in the District Court's opinion. Moreover, Atwood completely fails to address the denial of his Rule 59(e) Motion.

Instead, Atwood simply restates the same unsupported and unsupportable arguments considered and rejected by the District Court and attempts to raise more new arguments not raised to the District Court in opposition to CertainTeed's Motion.

Such arguments are insufficient to send this case back for Trial in front of the same judge who already found Atwood's arguments unconvincing.[3]

---

[3] Atwood never demanded a Jury Trial and thus any trial would be a Bench Trial.

-17-

Under such circumstances, Atwood's Appeal should be denied and the Final Judgment to CertainTeed dismissing Atwood's Claims should be upheld.

## V.  ARGUMENT

### STANDARDS OF REVIEW

#### A.  Reviewing a District Court's Granting of Summary Judgment

This Court "reviews a district court's grant of a motion for summary judgment *de novo*" applying the same standard as the trail court without deference to the trial court. *Othentec, Ltd. v. Phelan*, 526 F.3d 139, 140 (4th Cir. 2008) (quoting *Castillo v. Emergency Med. Assocs., P.A.*, 372 F.3d 643, 646 (4th Cir. 2004)*; see also Perini Corp. v. Perini Constr. Inc.*, 915 F.2d 121, 123 (4th Cir. 1990).

In other words, this Court reviews the underlying record and independently determines whether summary judgment may be upheld on any basis, including a basis on which the District Court did not base its decision.  *See, e.g., Charbonnages de France v. Smith*, 597 F.2d 406, 416 (4th Cir. 1979) (the appellate court is not bound to only consider the specific grounds decided upon by the district court and may affirm summary judgment on alternative grounds); *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 363 (4th Cir. 1985) (stating an appellate court has power to determine independently whether summary judgment may be upheld on an alternative ground where the basis chosen by the district court

proves erroneous); *Service & Training, Inc. v. Data Gen. Corp.*, 963 F.2d 680, 685 & n.10 (4th Cir. 1992) (citing *Ross* and restating its authority to consider alternative grounds); *Jackson v. Kimel*, 992 F.2d 1318, 1322 (4th Cir. 1993) (the Fourth Circuit in reviewing the grant of summary judgment may "affirm on any legal ground supported by the record" and is "not limited to the grounds relied on by the court.").

However, the Court will <u>not</u> consider <u>new</u> claims or arguments made by a party that the party failed to assert in opposition to a motion for summary judgment.  *See Kairgadam v. Bell Atlantic Corp.*, 46 Fed. Appx. 194, 195 (4th Cir. 2002).  "If a party fails to assert a legal reason why summary judgment should not be granted, that ground is waived and cannot be considered or raised on appeal." *Id.* (quoting *Grenier v. Cyanamid Plastics, Inc.*, 70 F.3d 667, 678 (1st Cir. 1995) and *Vaughner v. Pulito*, 804 F.2d 873, 877 n.2 (5th Cir. 1986)).

### B.     The Standard of Review for Summary Judgment

"*Rule 56(c) of the Federal Rules of Civil Procedure* requires the district court enter judgment against a party who, 'after adequate time for discovery . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Othentec*, 526 F.3d at 140 (quoting *Stone v. Liberty Mut. Ins.*

*Co.*, 105 F.3d 188, 190 (4th Cir. 1997) and *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

To prevail on summary judgment, a party must demonstrate: (1) there is no genuine issue as to any material fact; and (2) it is entitled to judgment as a matter of law. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). As the non-moving party, Atwood has the burden of showing a material fact is in genuine dispute. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986) (emphasis added). A material fact is one whose existence or non-existence could lead a fact-finder to a different outcome about an essential element of the claims at issue. *See Anderson*, 477 U.S. at 248.

The nonmoving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Othentec*, 526 F.3d at 140. (quoting *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)). Rather, a nonmoving party must produce some evidence (more than a "scintilla") "upon which a [fact-finder] could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." *Anderson*, 477 U.S. at 251. The nonmoving party must go beyond the pleadings and designate specific facts through affidavits, depositions, answers to interrogatories or

admission on file which show there is a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

### C.  <u>Reviewing a Rule 59(e) Motion to Alter or Amend a Judgment</u>

The Fourth Circuit reviews a district court's decision on a motion to alter or amend the judgment under Rule 59(e) for abuse of discretion. *See Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 402-03 (4th Cir. 1998) (citing *EEOC v. Lockheed Martin Corp., Aero & Naval Sys.*, 116 F.3d 110, 112 (4th Cir. 1997) and *Collison v. International Chem. Workers Union*, 34 F.3d 233, 236 (4th Cir. 1994)). A district court abuses its discretion when it fails to take relevant factors intended to guide its discretion into account or when it acts on the basis of "legal or factual misapprehensions" respecting those factors. *Id. (*citing *James v. Jacobson*, 6 F.3d 233, 242 (4th Cir. 1993).

The Fourth Circuit recognizes Rule 59(e) permits a district court to alter or amend its prior judgment in the following <u>very</u> <u>narrow</u> circumstances: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Hill v. Braxton*, 277 F.3d 701, 708 (4th Cir. 2002) (citing *Collison*, 34 F.3d at 236) (emphasis added).

The purpose of a Rule 59(e) motion is to "permit a district court to correct its own errors, 'sparing the parties and the appellate courts the burden of

appellate proceedings.'" *Pac. Ins. Co.*, 148 F.3d at 403 (internal citations omitted). A Rule 59(e) motion is <u>not</u> a means for a party to seek reconsideration of a court's prior ruling. *See Commercial Union Ins. Co. v. Charleston Marine Leasing Co.*, No. 94-1563, 1995 U.S. App. LEXIS 8762, at *13 (4th Cir. Apr. 17, 1995).

      A party may disagree with the result of a court's ruling, but the proper venue to voice such "mere disagreement" is with the appropriate U.S. Appellate Court, <u>not</u> in a Rule 59(e) motion. *See Hutchinson v. Staton*, 944 F.2d 1076, 1082 (4th Cir. 1993); *U.S. ex rel. Becker v. Westinghouse Savannah River Co.*, 305 F.3d 284, 290 (4th Cir. 2002).

      Rule 59(e) motions "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." 11 Wright, Miller, and Kane, *Federal Practice and Procedure* § 2810.1, at 163-4 (3d ed. 2012); *see also Wood v. Morequity, Inc.*, 331 Fed. Appx. 243, 245 (4th Cir. 2009) (affirming denial where motion was a restatement of arguments made during summary judgment); *Shirey v. City of Alexandria Sch. Bd.*, No. 99-1127, 2000 U.S. App. LEXIS 21236, at *7 (4th Cir. Aug. 23, 2000) (affirming denial where plaintiff raised new arguments that could have been presented in opposition to summary judgment).

## DISCUSSION OF THE ISSUES

CertainTeed is entitled to Summary Judgment and the dismissal of Atwood's Claims because there is no evidence of any material issue of fact in dispute that would preclude such a finding. Much of what Atwood argues on Appeal has long been waived. That which remains is not in dispute and clearly establishes Atwood has no basis for his claims. What Atwood provided to CertainTeed on the Disclosure Date was neither a "Trade Secret" nor "Confidential Information." Further, Atwood has not been damaged by any alleged act of CertainTeed and has no means to prove any damages for his claims.

### A.    What Atwood Has Failed to Argue, He Has Now Abandoned

Where a party fails to raise or discuss an issue in his brief on appeal, the issue is abandoned. *See Mayfield*, 674 F.3d at 377; *see also IGEN Int'l, Inc. v. Roche Diagnostics GmbH*, 335 F.3d 303, 308 (4th Cir. 2003) (Failure to present an argument on an issue in opening appellate briefs constitutes a waiver of those issues). Here, Atwood fails to address several issues in his brief which bear directly on his Appeal. Accordingly, he has now abandoned these issues.

First, Atwood appealed the District Court's denial of his Rule 59(e) Motion. JA 1408. However, Atwood completely fails to even address the Rule 59(e) Motion in his brief. He also fails to identify a single reason why the District

Court abused its discretion in denying this motion. Accordingly, Atwood has waived this issue.[4]

Second, Atwood fails to identify a single error of law made by the District Court in either granting CertainTeed's Motion for Summary Judgment or in denying the Rule 59(e) Motion. Nor has Atwood ever argued any of the case law cited by CertainTeed is incorrect. Such arguments are also now waived.

Finally, CertainTeed identified five independent reasons why Summary Judgment dismissing Atwood's Claims was warranted. Atwood completely fails to address the fifth reason, that he has no damages or means of recovery on his claims. Arguments to the contrary are now abandoned.

## B. Atwood's New Arguments Raised After Summary Judgment Are Waived

Atwood premises much of his appeal of the Motion for Summary Judgment on new arguments he first raised in his Rule 59(e) Motion. Because he did not raise these arguments in opposition to CertainTeed's Motion, these arguments are waived for purposes of summary judgment and cannot be considered or raised in this Appeal. *See Kairgadam*, 46 Fed. Appx. at 195.

---

[4] Assuming, *arguendo*, Atwood did not abandon this issue, the District Court's denial of the Rule 59(e) Motion was not an abuse of discretion because Atwood failed to identify in his any change in the law or any newly discovered evidence in support of his Rule 59(e) Motion. JA 1310-21.

The first new argument Atwood presents involves his Sierra Rai Concept and the notion this Concept is actually three separate and distinct "concepts," namely, Concept No. 1, Concept No. 2, and Concept No. 3 (collectively, the new "Multiple Concept Theory"). Atwood first identified his Multiple Concept Theory in support of his Rule 59(e) Motion. JA 1286. He neither identified or argued the Multiple Concept Theory in opposition to CertainTeed's Motion. For purposes of this Appeal, this argument is waived.

The second new argument Atwood presents involves his non-confidential disclosure of his Sierra Rai Concept to Owens Corning. Despite the clear terms of his written agreement with Owens Corning, Atwood now contends his disclosure to Owens Corning was somehow "reasonable" and therefore still confidential. This argument was also first raised in support of his Rule 59(e) Motion. JA 1297-98. It was <u>not</u> raised in opposition to CertainTeed's Motion, and therefore is waived for purposes of this Appeal.

## C.    The Elements Required for Atwood's Trade Secret and Breach of <u>Contract Claims Are Identical</u>

Although Atwood's Complaint contains two separate claims, these claims are, in essence, one. The two counts in Atwood's Complaint are: I - violation of the VUTSA <u>and</u> II - breach of the NDA. These claims overlap because each requires proof of the same material facts. If Atwood cannot prove one, he cannot prove the other.

-25-

### 1.    **VUTSA Claim**

Under the VUTSA, Atwood must first establish his Sierra Rai Concept was a "trade secret" when he disclosed it to CertainTeed on the Disclosure Date.  *See Trident Prods. and Servs., LLC v. Canadian Soiless Wholesale, Ltd.*, 859 F. Supp. 2d 771, 778 (E.D. Va. 2012).  The VUTSA defines a "trade secret" as:

> "information, including a formula, pattern, compilation, program, data, device, method, technique, or process, that:  (1) Derives <u>independent</u> <u>economic</u> <u>value</u>, actual or potential, from <u>not</u> being <u>generally</u> <u>known</u> to, and <u>not</u> being <u>readily</u> <u>ascertainable</u> by proper means by, other persons who can obtain economic value from its disclosure or use, and (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."

Va. Code § 59.1-336 (emphasis added).

<u>If</u> Atwood can prove his Sierra Rai Concept qualified as a "trade secret" on the Disclosure Date, Atwood must then establish that CertainTeed somehow misappropriated it.  *See Trident Prods.,* 859 F. Supp. 2d at 778.  To prove misappropriation, Atwood must establish CertainTeed disclosed his Sierra Rai Concept without his consent.  *See Trident Prods.,* 859 F. Supp. 2d at 780.

## 2.    **Breach of the NDA Claim**

To prove a breach of contract under Pennsylvania Law[5], Atwood must demonstrate:  (1) he had a contract with CertainTeed, (2) CertainTeed breached a duty imposed by that contract, <u>and</u> (3) Atwood has been damaged as a result of that breach.  *See Haywood v. Univ. of Pittsburgh*, No. 11-1200, 2013 U.S. Dist. LEXIS 140263, *39-40 (W.D. Pa. Sep. 30, 2013); citing *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003).  Atwood's contract claim premised on CertainTeed's alleged breach of the NDA, rests on the same principles as his VUTSA Claim.

Although he had a contract with CertainTeed, Atwood must establish he actually provided CertainTeed with "Confidential Information" which the NDA defines as:

> "trade secrets, know-how, and other confidential information relating to its business, including, without limitation, information regarding customers, suppliers, and business arrangements, technical and business data, know-how, processes, designs, and ideas…."

JA 32.  Atwood must also provide evidence his "Confidential Information" was <u>not</u> subject to one of the exceptions set forth in the NDA:

> "Recipient shall be under no obligation with respect to any Confidential Information of the other party that: (a) is or becomes generally available to the public…; [or] (b) is known to Recipient or any of its affiliates or representatives at the time of disclosure; …."

---

[5] The Parties agree the NDA is governed by Pennsylvania Law.  JA 35.

JA 32-33, 37.  The terms of the NDA are consistent with the exceptions to "Confidential Information" recognized under Pennsylvania Contract Law.  *See Conference Archives, Inc. v. Sound Images, Inc.*, No. 3:2006-76, 2010 U.S. Dist. LEXIS 46955, *7-8 (W.D. Pa. Mar. 31, 2010) (information generally available to the public may not be subsequently protected as confidential information under a non-confidentiality agreement).

<u>If</u> Atwood could prove his "Confidential Information" was in fact "confidential" on the Disclosure Date, he must then prove CertainTeed breached the NDA by improperly disclosing the "Confidential Information" <u>and</u> that he was damaged by the breach.  JA 32-33, 37; *Haywood*, 2013 U.S. Dist. LEXIS 140263, at *40.

Therefore, <u>both</u> Claims require Atwood to <u>first</u> prove he disclosed a protectable "Trade Secret" to CertainTeed on the Disclosure Date.  As the indisputable evidence of record clearly shows, Atwood did <u>not</u> disclose a protectable "secret" to CertainTeed on the Disclosure Date.  This failure ends the inquiry and defeats both of Atwood's Claims.

### D.    There is No Evidence of Any Material Issue of Fact – Atwood's <u>"Confidential Information" Is His Sierra Rai Concept</u>

Atwood attempts to create an issue of material fact by playing a trade secret shell game involving the identification of his Sierra Rai Concept, doing so in the face of his own admissions and other incontrovertible evidence of record.

Atwood, without citing to any actual objective evidence in the record, contends CertainTeed somehow mistook or misidentified his Sierra Rai Concept and the District Court was either confused or misled by this misidentification.   The undisputed evidence of record says otherwise.

Atwood, as the claimed inventor, bears the burden to identify his "Confidential Information" in clear concise terms.  Without doing so, there is no basis to determine whether CertainTeed improperly disclosed this information.

Atwood did, in fact, identify his "Confidential Information," stating, under oath, it was a "self-adhesive starter shingle" with "adhesive on the back of the shingle" and "multiple strips of adhesive," "on both sides of the shingle," "all the way across the shingle," "on both sides of the shingle."   JA 319-20, 324-32, 429.

CertainTeed's Motion used Atwood's own words to identify his "Confidential Information" and called it the "Sierra Rai Concept" or "Concept" as a short, simple, convenient, and consistent moniker throughout its briefing.  JA 1195-96.  CertainTeed even explained this to the District Court so there would be no confusion as to Atwood's Sierra Rai Concept.  JA 1195.

Atwood confirmed this identification of his "Confidential Information," in the description crafted by his Counsel in opposition to CertainTeed's Motion, stating Atwood's "Confidential Information was:   (1)

-29-

"Starter Shingle with adhesive on both sides," and (2) "Field Shingles with multiple adhesive on both sides." JA 607.

This is entirely consistent with the CertainTeed's identification of Atwood's "Confidential Information" / "Sierra Rai Concept" – shingles with multiple strips of adhesive on both sides of a shingle – and the testimony on which it is based:

> **"Q. Can you tell us, sir, in as much detail as possible, in your own words, precisely what you mean by 'confidential information' as set forth in that paragraph and throughout the complaint?**
>
> A. A self-adhesing starter shingle that adheres itself to the roof where the adhesive is on the bottom the starter and a shingle that has multiple adhesive points.
>
> **Q. That's it?**
>
> A. That's it."

JA 228, 319. The material issue of fact Atwood insinuates regarding this definition simply does not exist.

**E.    Atwood's New "Multiple Concepts Theory" Is Waived and, If Not Waived, Still Creates No Issue of Material Fact**

Atwood attempted in the Rule 59(e) Motion and now again on Appeal to divide his Sierra Rai Concept into three different "concepts." His Appeal focuses solely on the first two concepts, which he now defines as: (1) a starter shingle with adhesive strips on both sides ("Concept 1") and (2) field shingles with

multiple adhesive strips on both sides ("Concept 2").  Atwood contends CertainTeed disclosed Concept 1 in its '493 Patent but that the concept does not exist in the Jenkins June 2008 Invention Notes or the Invention Disclosure Form. DKT No. 13, p. 13.  Atwood admits that Concept 2 is in the Jenkins June 2008 Invention Notes, but claims this concept was added at some unknown later date after the Disclosure Date.  *Id.*, p. 14.

First, the entire "Multiple Concepts" argument is waived because Atwood failed to raise it in opposition to CertainTeed's Motion.  *See Kairgadam*, 46 Fed. Appx. at 195; *Shirey v. City of Alexandria Sch. Bd.*, No. 99-1127, 2000 U.S. App. LEXIS 21236, at *7 (4th Cir. Aug. 23, 2000) (affirming denial of Rule 59(e) motion where plaintiff raised new arguments that could have been presented in opposition to summary judgment).

Second, and *assuming arguendo*, Atwood did raise the "Multiple Concepts" argument previously, it fails because the concepts are not materially different, there is no evidence of record to suggest there is an issue of material fact as to their purported differences, and the District Court did not see any material difference which precluded Summary Judgment.  Additionally, Atwood ignores his own <u>admissions</u> regarding the existence of these concepts <u>in</u> the Jenkins June 2008 Invention Notes <u>and</u> the '493 Patent.

There is no material difference between Atwood's claimed Concept 2 and his claimed Concept 1 because Concept 2 completely subsumes Concept 1. While there is a technical difference between the two concepts, the difference is immaterial and no evidence of record suggests otherwise.

Concept 2 suggests the use of multiple adhesive points on both sides of a shingle. This is <u>not</u> a new or novel concept as evidence by CertainTeed's '493 Patent and at least three Prior Patents which establish the use of multiple strips of adhesive on both sides of a shingle was well known to roofing industry for years. *Infra,* pp. 48-57. If Concept 2 is not a "Trade Secret" or "Confidential," than the use of fewer or a single strip of adhesive on both sides of a shingle (Concept 1) cannot possibly be a secret.

Further, Atwood admits Concept 2 <u>is</u> described <u>in</u> <u>both</u> the Jenkins June 2008 Invention Notes <u>and</u> the '493 Patent. DKT 13, pp. 9, 14-15. His arguments about later additions to the Jenkins June 2008 Invention Notes are not and have never been supported by any actual evidence in the record. Rather, Atwood continues to rely <u>only</u> on speculation to make these claims, which are insufficient to raise a material issue of fact which would preclude summary judgment. *See* DKT 13, p. 14; *see also Beale*, 796 F.2d at 214.

Atwood's arguments regarding his Concept 1 are also contradicted by his own admissions and definition of his Concept. Atwood's Sierra Rai Concept

-32-

has forever been a starter or shingle with multiple adhesive points on both sides, which he contends is equally transferable to any kind of shingle including starter shingles, field shingles, rake shingles, or to shingles for hips, ridges, cut valleys, or open valleys.   JA 41-48, 325, 331, 377, 452-53.   Atwood's new attempt to differentiate his idea into multiple concepts does not change his own prior definition.

Even though Atwood has waived the arguments around Concept 1 and Concept 2, his arguments are not supported by the evidence of record, they are not supported by common sense, they are counter to multiple prior existing patents which disclose the idea of multiple adhesive points on shingles, and, for purposes of this Appeal, they do not create any issue of material fact which would preclude affirming summary judgment.

### F.    Atwood's Sierra Rai Concept Was Not a "Trade Secret" or "Confidential" When Atwood Disclosed It to CertainTeed On the Disclosure Date

Atwood fails to present any material evidence of record which could establish what he provided to CertainTeed was, in fact, either "secret" or "confidential" as of the Disclosure Date.  Therefore, Atwood cannot prove the first, and threshold prong of either of his Claims against CertainTeed and the District Court was correct to dismiss his Claims.  Nothing has changed since that time and

Atwood still has not and cannot point to any issue of material fact in the record which could change the District Court's findings.

The indisputable evidence demonstrates Atwood's Sierra Rai Concept was <u>not</u> a Trade Secret or Confidential at the time of disclosure for several reasons. First, Atwood's Sierra Rai Concept had/has <u>no</u> independent economic value and no one in the roofing industry has seen any value in it. *See* Damages Section, *infra*. p. 59, *et seq.* Second, his Concept was known to CertainTeed and readily ascertainable by the general public prior to the Disclosure Date. Finally, and perhaps most fatally, Atwood failed to take reasonable efforts to maintain its purported secrecy.[6]

Specifically, the undisputed evidence shows: (1) Atwood disclosed his Concept on a <u>non</u>-<u>confidential</u> basis to one of CertainTeed's largest competitors five months <u>prior</u> to the Disclosure Date, (2) CertainTeed invented an Invention which Atwood claims is his Concept at least four months <u>prior</u> to the Disclosure Date, (3) material elements to Atwood's Sierra Rai Concept were publically disclosed in at least three U.S. Patents years <u>prior</u> to the Disclosure Date, <u>and</u> (4)

---

[6] Each of these reasons independently defeats Atwood's Claims and this Court need only find support for one to affirm Summary Judgment. *See Consol. Coal Co.*, 683 F.2d at 831-32 (4th Cir. 1982). By comparison, Atwood must convince this Court that each and every one of those grounds is incorrect. *See U.S. v. Lavabit, LLC (In re Under Seal)*, 749 F.3d 276, 293 (4th Cir. 2014) (citing *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014)).

the CertainTeed product which Atwood claims embodies his Concept was manufactured and on sale to the public for at least seven years <u>prior</u> to the Disclosure Date.

### 1.    The <u>Non</u>-Confidential Disclosure of Atwood's Sierra Rai <u>Concept to Owens Corning Prior to the Disclosure Date</u>

Atwood's own actions <u>before</u> he ever approached CertainTeed with his Concept defeat his claims.  Specifically, the disclosure of Atwood's Sierra Rai Concept to CertainTeed's competitor, Owens Corning, on a <u>specific</u>, <u>explicit</u>, <u>non</u>-<u>confidential</u> basis defeats <u>any</u> claim that what he <u>later</u> provided to CertainTeed was in fact, "Secret" or "Confidential."

A purported Trade Secret does not "survive when the alleged owner fails to take reasonable precautions to keep the information secret." *Young Design, Inc. v. Teletronics Int'l, Inc.*, No. 00-cv-970, 2001 U.S. Dist. LEXIS 21851, at *18-19 (E.D. Va. July 31, 2001) (holding plaintiff did not take reasonable efforts to protect secrecy of trade secrets where disclosed to defendant and third-parties without non-disclosure agreement).  Rights to a Trade Secret "<u>do</u> <u>not</u> <u>survive</u> <u>when</u> otherwise protected information is <u>disclosed</u> to <u>others</u>…who are <u>under</u> <u>no</u> <u>obligation</u> to <u>protect</u> [its] <u>confidentiality</u>."  *See id*. (emphasis added).

A <u>single</u> unrestricted disclosure of a Trade Secret to a <u>single</u> third party on a completely <u>non</u>-confidential basis is sufficient to remove "any indicia of secrecy which is necessary for proprietary information to be considered a trade

-35-

secret" and such non-confidential disclosure will defeat any misappropriation claim founded upon that purported secret. *Crown Indus., Inc.*, 335 F. Supp. 749, 760-1 (N.D. Ill. 1971); *see also Nova Chemicals, Inc. v. Sekisui Plastics, Inc.*, 579 F. 3d 319, 327-28 (3d Cir. 2009); *Auto Channel, Inc. v. Speedvision Network, LLC*, 144 F. Supp. 2d 784, 794-96 (W. D. Ky. 2001).

The destruction of Trade Secret protection is even more clear when a party expressly agrees to disclose the alleged secret on a non-confidential basis (e.g. by signing an explicit confidentiality waiver prior to disclosure). *See, e.g., Kearns v. Ford Motor Co.*, No. 8-70740, 1978 U.S. Dist. LEXIS 16686, at *14-16 (E.D. Mich. July 11, 1978); *Burteen v. Milton Bradley Co.*, 592 F. Supp. 1021, 1032 (D.R.I. 1984) *reversed on other grounds*, 763 F.2d 461 (1st Cir. 1985). Under such circumstances, the disclosing party cannot later claim it had an implied confidential relationship with the party to whom it disclosed its secret on a non-confidential basis. *See id*.

In fact, summary judgment dismissing a Trade Secret claim is entirely appropriate once the party claiming the "Trade Secret" discloses that secret to a third party without any confidentiality restrictions. *See Hills Holliday Connors Cosmospulos, Inc. v. Greenfield*, 433 Fed. Appx. 207, 214-15 (4th Cir. 2011); *see also Secure Servs. Tech., Inc. v. Time and Space Processing, Inc.*, 722 F. Supp. 1354, 1360-1 (E.D. Va. 1989) (summary judgment granted because plaintiff

publically disclosed trade secrets with no confidentiality or use restrictions); *see also Kearns*, 1978 U.S. Dist. LEXIS 16686, at *14-16 (granting summary judgment on trade secret claim where plaintiff signed "Confidential Disclosure Waiver"); *Stratienko v. Cordis Corp.*, 429 F.3d 592, 600 (6th Cir. 2005).

Here, five months before disclosing Atwood's Sierra Rai Concept to CertainTeed, Atwood <u>expressly</u> <u>agreed</u> to disclose and did disclose Atwood's Sierra Rai Concept on a <u>specific</u> <u>non</u>-confidential basis to Owens Corning (CertainTeed's 2nd largest competitor).   JA 523-25, 531.   The Unsolicited Disclosure Letter, acknowledged and signed by Atwood, reads in pertinent part:

> "Because of this, you [Atwood] will understand that we [Owens Corning] can evaluate a suggestion only on the condition that our receiving a receiving a suggestion and evaluating it does not obligate us in any way.   Please understand that Owens Corning is not obligated to pay anything unless we execute a prior written contract stating that we will pay for a suggestion. This letter is not such a contract.  It merely sets for the terms on which we would be willing to talk to you on a <u>non</u>-<u>confidential</u> <u>basis</u>.
>
> <u>Before</u> <u>you</u> <u>disclose</u> your suggestion or we evaluate it, we prefer that you take whatever steps you deem necessary under the patent laws for your own protection…. But whether or not you take such steps, we shall be happy to consider your suggestion on the conditions we have mentioned.
>
> … If you are in agreement with the terms of this letter, please sign both copies and return one to me along with any information you would like us to review."

JA 524-25 (emphasis added).

Atwood agreed to these terms and, through Counsel, provided Owens Corning with a package of materials on a <u>non</u>-<u>confidential</u> basis describing the very same Concept he later provided to CertainTeed.  JA 451-53, 523-25.  Owens Corning received, considered, and rejected Atwood's Sierra Rai Concept without any obligation to maintain its confidence.  JA 526.

Atwood (and his Counsel) destroyed any "secrecy" or "confidentiality" he may have had to his Sierra Rai Concept by making such an <u>explicit</u>, <u>non</u>-confidential disclosure to Owens Corning.  Atwood, therefore, has no grounds to claim what he provided to CertainTeed was "Secret" or "Confidential" and no grounds to claim CertainTeed improperly disclosed anything related to his Concept.  Thus, both his claims fail.  *See Hills*, 433 Fed. Appx. at 214-15 (4th Cir. 2011); *see also Secure Servs.*, 722 F. Supp. at 1360-61.

### a.    Atwood's Argument Regarding the Purported Differences Between What He Disclosed to Owens Corning and CertainTeed Contradicts the <u>Indisputable Facts</u>

In an effort to avoid the consequences of his fatal, <u>non</u>-confidential disclosure, Atwood argues what he provided to Owens Corning somehow differed from what he provided to CertainTeed.   The record does not support this contention.

A simple comparison of the respective Owens Corning and CertainTeed Disclosures reveals Atwood disclosed the same concept to both

companies.   In each case, Atwood disclosed the <u>same</u> idea of a shingle roll <u>or</u> shingle with either full adhesive backing or multiple adhesive lines.   JA 41-42, 451-53.   Below is a red-line comparison of the letters Atwood provided to Jason Fokens (Owens Corning) and to Gregory Jacobs (CertainTeed) respectively.   JA 1216-21.   The color of the text indicates which text was sent to each company:

- <u>Red Font</u> indicates text sent <u>only to Owens Corning</u>,

- <u>Blue Font</u> indicates text <u>only to CertainTeed</u>, and

- <u>Black Font</u> represents text which is <u>common</u> to both letters.

The two letters commonly identify: (1) a starter shingle and shingle with full backing or multiple adhesive strips; (2) five pages of photographs using the same language to describe each attached photo; and (3) use of "SR" product on shingles, starter shingles, hips, rakes, and valleys.  JA 41-42, 451-53.

Bryan L Atwood
175 Walnut St
Amherst VA 24521
434 ~~946 9897~~9469897

Mr. ~~Fokens~~Jacobs

~~The agreement that Brook Speith E Mailed to me on your behalf I have signed and am returning to you.~~

~~I am looking foreword to hopefully working with you and Owens Coming.~~

I have enclosed pictures of my product I call it Sierra Rai. So I will refer to it as SR

The materials that ~~I~~I used are on the market now~~,~~. SR may come in 3 or more sizes ~~.if~~If I understand correctly the mat size is 36 inches. So the widths need to be

7.2 inches - 9 inches or 12 inches for no waste of materials. SR needs to be in roll form or could even be made as a shingle. The backing can be full adhesive or ~~have 4Different~~2 to 4 different tar lines ~~as shown in (Photos page 1)~~ at all 4 edges front and back or front and back bottom edge. All 4 edges (photo page 1)

SR must be ridged enough to overhang the roof edge~~.~~ by at least 1 inch. I myself have had to overhang the edge by up to 3 inches (Photos page 2) because builder did not have rake board or gutter board installed but wanted roofing done.

I have looked at other company's shingle starters and have found that they all recommend less than % inch overhang. I have enclosed some of their installation recommendations. If you fallow their installation you would still have to install a upside-down shingle for over hang and that would make the edge have 3 to 4 layers at the edges of roof. Our building codes says shingles must have a 1 inch overhang finished product (photo page 3)

Not all building contractors use drip edge and have the siding company's bend their coil stock with 3/4 ~~Inch~~inch bend at the gutter board and up the rake some bend. The coil stock so ~~it~~It looks like it has a ~~bump out on the~~ rake board (Photos page 3) at no extra cost. ~~Our building code says shingles must have at least a 1 inch overhang finish product, (Photos page 3)~~ to the builder.

SR with full adhesive backing may weld itself to roof deck & drip edge.

SR with the tar backing is still a self sealing product but is removable. As everyone knows ~~shingle~~shingled roofs must be replaced eventually. (As a roofer this would be my first choice) SR also seals itself to the old shingles when doing a roof over (photos page 1&5)

Also I have roofed for some of the nations biggest builders in Myrtle Beach S.C. It is building code to tar the shingles to the edge of ~~fire~~the roof in high wind areas , and the hurricane states.

I also know that a lot of roofers in Myrtle Beach ~~really~~ skimp on the tar.  SR may also be Dade County approved replacing using tubes of tar because it already has tar on the backing not just in 1 spot but 2. SR has 4 tar lines because it can be used on (hips) (ridge) (ridge-vent) to help hold cap down , (Photos page 1)

SR may also be used in cut valleys and open valleys so the cut edges don't have ~~to~~To be tarred down.(Photos page 4)

SR 7.2 inch can be used for 3 tab shingles (7.2 has less 2 inch seam lap when ~~used~~

Used on architect shingles that have a 5 5/8 inch exposures) (starter shingle) (~~rake shingle) (hips) (ridges) (cut valleys) (open valleys) (temporary~~Rake shingle) (Hips) (Ridges) (Cut valleys) (Open valleys) (Temporary wall flashing) (~~under~~Under cap on ridge vent) (~~slate~~Slate cap) (~~cedar~~Cedar shake cap)

SR 9 inch can be used for 3 tab & architect ~~shingle~~shingles (starter shingle) (~~rake shingle) (hips) (ridges) (cut valleys) (open valleys) (temporary~~Rake shingle) (Hips) (Ridges) (Cut valleys) (Open valleys) (Temporary wall flashing) (~~under~~Under cap on ridge vent) (~~slate~~Slate cap) (~~cedar~~Cedar shakes)

SR 12 inch can be used for all the above including high end shingles that have ~~large~~Larger exposures.  ~~The~~I have received prices for manufacturing SR so if you do ~~go~~Go to ~~a~~an outside manufacture I have a perspective company.  I was going to have SR manufactured for private labeling but if ~~Owen Corning~~certainteed is interested in ~~manufacturing~~Manufacturing SR I am willing to work with you. ~~I~~I am willing to have ~~it~~It patent ~~under~~Under your name and mine price is something we can discuss at a later time if ~~you~~You are interested in marketing SR.

If you have any questions give me a call sincerely

~~Sincerely~~
Bryan L Atwood,

As was clear to the District Court and continues to be clear, there is <u>no material difference</u> between what Atwood disclosed to Owens Corning and what he subsequently disclosed to CertainTeed.  There is, in fact, only one, minor, immaterial difference of <u>two words</u> between the two Disclosures.  In the Owens

-41-

Corning Disclosure Atwood says "four different tar lines," while in the CertainTeed Disclosure, he says "<u>two to</u> four different tar lines."  This two word "difference" is <u>not</u> material given both two and four are "multiple" tar lines, which is how Atwood has always defined his Sierra Rai Concept.  The content of the Disclosure letters are therefore materially identical and the photos Atwood admittedly provided are identical.  JA 634.  Atwood's contention the photos do not show the specific starter shingle used in the installation does not distract from the similarities so otherwise blatant.[7]

Additionally, Atwood's correspondence with Owens Corning in March 2008 indicates he was involved in ongoing discussions with <u>other</u> roofing manufacturers about his <u>same</u> "Confidential Idea."  JA 515 ("it would not be fair to the companies that signed the agreements and putting in bids").  Atwood's Counsel later confirmed to Owens Corning that Atwood had been involved with Dewitt Products regarding the "Sierra Rai" product.  JA 518-19.  In fact, Atwood admits he provided the same package of materials regarding Atwood's Sierra Rai Concept to Dewitt, MFM, and Owens Corning.  JA 630-31.  This clearly indicates Atwood considered the "Sierra Rai" products he previously provided to other companies to be the <u>same</u> as what he provided to Owens Corning.  This is important because

---

[7] What the photos do show is Atwood actually installed his purported "confidential" Concept in at least two <u>public</u> locations prior to disclosing the Concept to any of the third party manufacturers.

-42-

Atwood also admitted what he provided to the <u>other</u> roofing manufacturers he <u>also</u> provided to CertainTeed.  JA 339.

Given, (1) the overwhelming similarities between the Owens Corning and CertainTeed Letters describing the "Sierra Rai" product, (2) the shared photos in each letter, (3) Atwood's additional correspondence with Owens Corning, and (4) Atwood's testimony about what he provided to CertainTeed and other roofing manufacturers, Atwood cannot be reasonably heard to argue that what he provided to Owens Corning differed in any meaningful way from what he provided to CertainTeed.

> **b.    Atwood's Contention Regarding the Reasonableness of his Non-Confidential Disclosure to Owens Corning <u>Runs Counter to Law and Common Sense</u>**

Atwood also attempts to salvage his fatal disclosure to Owens Corning by arguing his non-confidential disclosure was "reasonable" and the secrecy of Atwood's Sierra Rai Concept somehow survived the disclosure.  This argument fails for multiple reasons.

First, as mentioned previously, the argument was not proffered by Atwood during his opposition to CertainTeed's Motion, and as such, is waived. *See Kairgadam*, 46 Fed. Appx. at 195.  Second, Atwood's argument regarding the reasonableness of his disclosure runs counter to the case law so clearly cited above.

*See, e.g. Hills*, 433 Fed. Appx. at 214-15; *Secure Servs.*, 722 F. Supp. at 1360-61; *Kearns*, 1978 U.S. Dist. LEXIS 16686, at *14-16.

By comparison, Atwood only cites to a single case, *MicroStrategy, Inc. v. Business Objects, S.A.*, 331 F. Supp. 2d 396, 416 (E.D. Va. 2004), to support his proposition that his disclosure was "reasonable" by quoting one sentence which states merely a "general principle." DKT No. 13, pp. 20-21). Atwood neglects (1) to quote a preceding, more specific and applicable sentence from that same paragraph, and/or (2) to explain just how disclosing a claimed "Trade Secret" to a competitor via a specific, negotiated, written, signed Non-Confidentiality Agreement could possibly constitute "reasonable efforts" to "maintain secrecy" of same.

First, the *MicroStrategy* Court, only two sentences prior to the one quoted by Atwood, said:

> "The secrecy need not be absolute: the owner of a trade secret, may, without losing protection, disclose it to a licensee, an employee, or a stranger, if the disclosure is made in confidence, express or implied."

*Id.* at 416 (internal citations omitted).

Atwood does not allege nor is there any evidence of record that Owens Corning was his "licensee" or "employee." Thus, as a "stranger," in order to have the claimed "Trade Secret" not to lose protection, the disclosure would had to have been "made in confidence, express or implied." There is no allegation or

-44-

any evidence of record the disclosure to Owens Corning was made in "express" confidence. In fact, the "express" provision in the Agreement is that the disclosure was made on a <u>non</u>-confidential basis. JA 524-25. Under circumstances where two parties, both represented by counsel, negotiate a written, signed Agreement which specifically provides the disclosure be made on a <u>non</u>-confidential basis, no disclosure "in confidence" can possibly be implied. No rational person could infer therefrom that the disclosure was made "in confidence." In fact, it was clearly, "expressly" made <u>not</u> in confidence.

Second, the *MicroStrategy* Court, in the one sentence quoted by Atwood, observed three things could constitute "reasonable efforts" to maintain secrecy: (1) "restricting access to information," (2) "implementing confidentiality agreements," and/or (3) "providing physical barriers to access."

In regard to the disclosure to Owens Corning, Atwood did none of these things. He certainly did not "restrict access to the information." In fact, he provided all of the information to Owens Corning on a <u>non</u>-confidential basis. He also did not "implement confidentiality agreements." Instead, he implemented a <u>non</u>-confidentiality agreement. Finally, he did not "provide physical barriers to access." On the contrary, Atwood eliminated all "physical barriers to access" by providing all of the information directly to CertainTeed's competitor, Owens Corning.

-45-

Thus, Atwood's citation to and purported reliance upon the *MicroStrategy* case is, at best, misplaced.

Finally, Atwood attempts to build upon a series of inferences to support his reasonableness argument; doing so, again/still, without a single citation to a fact in the record. Atwood contends Owens Corning did not keep the information Atwood provided it and did not divulge this information because of CertainTeed's '493 Patent. *See* DKT No. 13, p. 26. Nowhere is there any actual evidentiary support for either of these contentions in the record on CertainTeed's Motion. Without any factual support, this Court cannot rely on such contentions. *See e.g., Anderson*, 477 U.S. at 251; *Othentec*, 526 F.3d at 140; *Beale*, 769 F.2d at 214.

Atwood's Brief fails to overcome the clear and fatal disclosure he made to Owens Corning regarding his Sierra Rai Concept. This fatal disclosure was recognized by the District Court and was and is supported by incontrovertible and material evidence. On this ground alone, this Court could, and should uphold CertainTeed's Motion.

### 2. There Is No Doubt CertainTeed Invented the '493 Patent Prior to the Disclosure Date

Atwood continues to attempt to cloud CertainTeed's indisputable inventorship of its '493 Patent. In the face of indisputable factual evidence, Atwood makes arguments that rely only on speculation and conjecture. Atwood

-46-

fails to identify a single piece of evidence regarding the circumstances surrounding CertainTeed's invention of the '493 Patent.

### a.    CertainTeed's Invention of Its '493 Patent Prior to the Disclosure Date

The indisputable facts surrounding this document are simple.  On June 10, 2008, CertainTeed employee, Robert L. Jenkins prepared the Jenkins June 2008 Invention Notes describing his Invention for a "Weather Resistant Shingle System."  JA 287-89, 543-44.  Mr. Jenkins had no knowledge of Mr. Atwood or Atwood's Sierra Rai Concept at the time he prepared the Notes.  JA 273-74, 281-84, 297-98.  On June 11, 2008, Mr. Jenkins shared the Notes internally with two long-standing CertainTeed colleagues, Mr. Brandt. and Mr. Koch.  JA 268-70, 288-90, 301-05.  On June 11, 2008, Mr. Brandt read and signed Jenkins June 2008 Invention Notes to confirm his understanding of Mr. Jenkins' Invention and Mr. Jenkins dated the finalization of both pages of his notes "6-11-2008" accordingly. *Id.*  The Notes have not been altered or changed at any point, in any way, after they were created on June 10, 2008 and witnessed on June 11, 2008.  JA 288.

Atwood has no evidence, document, testimony, or exhibit which in any way tends to prove the Notes are not authentic or, more importantly, they were altered in any way after June 11, 2008 or the Disclosure Date.

-47-

### b.  The "Sang Report" Concludes Nothing About When the Jenkins June 2008 Invention Notes Were Created

Atwood's continued attempts to dispute the authenticity of the Jenkins June 2008 Invention Notes (or "Notes") are without any actual factual, evidentiary support.  Atwood suggests Mr. Jenkins (or someone else) altered his Notes, writing the date(s) and/or including 'a starter shingle with an adhesive strip' sometime after the Disclosure Date.

Therefore, the sole issue raised by Atwood's speculation is WHEN the dates and/or the phrase "a starter shingle with an adhesive strip" were written.[8]  Atwood posits the Jenkins June 2008 Invention Notes were altered in some way after October 7, 2008.[9]

The only "evidence" Atwood offers to support his speculation that someone altered the Notes after The Disclosure Date is Plaintiff's Exhibit 15 (the "Sang Report").  JA 197-98.  However, the Sang Report is silent on the issue of

---

[8] At a Hearing about these Notes, Magistrate Judge Anderson understood and stated clearly the only material issue is WHEN anything was written thereon. JA 1241.  The only evidence of record on this point is the Notes were written by Mr. Jenkins on June 10, 2008, signed by Messrs. Jenkins and Brandt, and Mr. Jenkins dated the Notes June 11, 2008.  JA 268-70, 288-90, 301-05.  There is no evidence of record to the contrary.

[9] The Notes do contain erasures, as the document is written exclusively in pencil, except for the "6-11-2008" dates and the Brandt signature in pen.  But the fact pencil marks have been erased, without more, does tend to prove WHEN any mark was made on the Notes.  And, not one of Atwood's three purported material issues of fact even relate to the "erasures."

"WHEN" any mark (or erasure) was made. The Sang Report is simply not evidence relevant to the question of "WHEN" and thus it cannot and does not create a genuine issue of material fact.[10]

By comparison, the only actual evidence of record relevant to this issue is the dated document itself, the sworn testimony of its author, Mr. Jenkins, and the sworn testimony of two witnesses, Messrs, Brandt and Koch, all of which confirm it was created on June 10-11, 2008 and not altered at all thereafter. JA 268-70, 288-90, 301-05. Atwood produced no evidence whatsoever to impugn the credibility of these witnesses.

Additionally, CertainTeed provided a report from its own expert, Mr. Aginsky, stating it is not scientifically possible to determine WHEN anything was

---

[10] In fact, Mr. Sang's "Report" is not an expert opinion, but merely, according to him, a "preliminary field examination" that reached no conclusions other than that he required more testing. Atwood had a second expert conduct a "more comprehensive laboratory examination" using "more sophisticated equipment." JA 1216-17. Yet neither Mr. Sang or Atwood's second expert rendered any opinion on WHEN any marks were made on the Notes.

The Sang Report says nothing which would tend to prove or disprove WHO wrote anything in the Notes. The only evidence of WHO wrote anything thereon is the Testimony of Mr. Jenkins, Mr. Brandt and Mr. Koch. JA 268-70, 288-90, 301-05. Atwood has produced no evidence to controvert this.

Finally, Sang's characterizations of certain markings ("Questioned," "anomalies," "irregularities," "overwritten," "complex erasure") are offered without any foundation or explanation and do not tend to prove or disprove any relevant, material issue of fact. Nor do they suggest WHEN anything was written thereon. His photographs are simply that – enhanced images of portions of the Notes, from which he draws no conclusions and renders no opinions.

written on the Jenkins June 2008 Invention Notes by any existing test.  JA 1228.
Atwood's Counsel, in open court, <u>and</u> in correspondence, acknowledged such a
determination is impossible.  JA 1241, 1244-45.  Atwood offered no evidence to
contradict these facts.

As such, Atwood has no evidence whatsoever which creates a genuine
material issue of fact as to <u>WHEN</u> anything was written on the Jenkins June 2008
Invention Notes.  Atwood's claims are merely speculation that cannot defeat the
motion for summary judgment.  Without any evidence to the contrary, Atwood
cannot rebut the fact the Jenkins June 2008 Invention Notes were created <u>before</u>
the Disclosure Date, and therefore the Invention giving rise to the '493 Patent was
created and known to CertainTeed <u>prior</u> to the Disclosure Date.

Atwood admitted as much during Summary Judgment.   Atwood
claims his Concept <u>is</u> embodied in the Jenkins June 2008 Invention Notes, as each
show multiple adhesive points on both sides of shingle and starter shingle.  JA 25,
419-22.  Atwood's Brief attempts to muddy these admissions, but such admissions
remain.

Atwood also admits, if the Jenkins June 2008 Invention Notes are
authentic and created prior to the Disclosure Date (as they are), then CertainTeed
knew about Atwood's alleged "secret" <u>prior</u> to his disclosure of the same, and

CertainTeed could not have improperly disclosed this information in any way.  JA 419-422.

As the incontrovertible material evidence shows, and as Atwood has admitted, what Atwood claimed was "confidential" when he disclosed it to CertainTeed, was in fact known to CertainTeed months in advance.  Such being the case, what Atwood provided CertainTeed was <u>neither</u> a "Trade Secret" nor "Confidential," and both his claims fail.

### 3. Atwood's Sierra Rai Concept Had Been Widely Known to the Roofing Industry for Years Prior to the Disclosure Date

To be protected as a "Trade Secret," the information must <u>not</u> be generally known in the trade or business.  *See Young Design, Inc.*, 2001 U.S. Dist. LEXIS 21851, at *27-8 (holding plaintiff's claimed trade secrets were generally known and used in radio engineering trade); *see also Conference Archives, Inc.*, 2010 U.S. Dist. LEXIS 46955, at *7-8 (information generally available to the public may not be subsequently protected as confidential information under a non-confidentiality agreement).

Further, if the essential details of an alleged Trade Secret have been previously disclosed in a Patent, then those details are in the public domain and cannot be protected as a Trade Secret or be the basis for a Trade Secret misappropriation claim.  *See, e.g., Bondpro Corp. v. Siemens Power Generation, Inc.*, 463 F.3d 702, 706-07 (7th Cir. 2006) (disclosure in a Patent negates Trade

-51-

Secrets claim); *Crown Indus., Inc.*, 335 F. Supp. at 760-1 (holding alleged trade secrets were completely disclosed in prior art and were, therefore, in the public domain); *see also Davis v. General Motors Corp.*, No. 73-1302, 1977 U.S. Dist. LEXIS 15246, at *11-3 (N.D. Ill. June 27, 1977) (granting summary judgment where plaintiff's trade secrets are generally known and disclosed in third-party patent registrations); *Nickelson v. General Motors Corp.,* 361 F.2d 196, 199 (7th Cir. 1966) (holding alleged trade secret was commonly used in the industry); *Penalty Kick Mgmt. Ltd. v. Coca Cola Co.*, 318 F.3d 1284, 1292 (11th Cir. 2003) (holding most of plaintiff's claimed trade secrets were not protectable because they were disclosed by the prior art outlined in third-party patent applications).

CertainTeed identified at least three prior existing U.S. Patents, namely the Corbin Patent, the Robinson Patent, and the Buck Patent (collectively, "Prior Patents") which disclose the essential elements of Atwood's Sierra Rai Concept. JA 530-31, 586-605. Individually and collectively, the Prior Patents demonstrate the concept of putting multiple adhesives on both sides of a shingle has been known and readily accessible to the general public for decades.

<u>The Corbin Patent</u>

Figure 1, Nos. 24 and 26 of the Corbin Patent identifies <u>multiple</u> strips of adhesive on the <u>front/upper</u> surface of the shingle, while Figure 4, Nos. 52 and

-52-

56 identifies <u>multiple</u> strips of adhesive on the <u>back</u> surface of the shingle.    JA

530, 586-90.



### The Buck Patent

Figure 3, Nos. 18 and 20 of the Buck Patent shows <u>multiple</u> lines of

adhesive along the <u>front/top</u> portion of the shingle, while Figures 5 and 6, Nos. 24

and 26 show <u>multiple</u> lines of adhesive along the <u>bottom/back</u> portion of the

shingle.  JA 530, 591-97.



<u>The Robinson Patent</u>

Figure 2, Nos. 108 and 111 of the Robinson Patent identifies <u>multiple</u> adhesive zones on the <u>lower</u> surface of a shingle, while Nos. 112 and 117 identify <u>multiple</u> adhesive zones on the <u>upper</u> surface of the shingle.  JA 531, 598-605.



<u>Fig. 2</u>

**a.      Atwood's Attempt to Differentiate Starter/Field Shingle is Inconsequential**

Atwood attempts to differentiate the three Prior Art Patents by arguing the patents are irrelevant because each is only for field shingles, and <u>not</u> starter shingles.  Atwood argued this distinction to no avail during his opposition to Summary Judgment.  JA 622-24.

Atwood's contention about the import of the distinction between a field shingle and starter shingle belies his own argument.  He contends the three Prior Patents are irrelevant because each claims an invention for field shingles and not starter shingles.  Here, the only invention claimed in the '493 Patent is for a field shingle, and none of the claims of the patent include any mention of starter

-54-

shingles.  JA 71-72.  Taking Atwood's argument on its face, CertainTeed's '493 Patent would, likewise, be irrelevant.

Atwood's argument similarly fails because it contradicts his own admissions that his Sierra Rai Concept applies equally to any kind of shingle, starter and field shingles, as well a rake shingle, or a shingle for hips, ridges, cut valleys, or open valleys.  JA 41-48, 325, 331, 377, 452-53.

Moreover, there is no material difference between a starter shingle and a field shingle.  The starter shingle is merely the first row or course of shingles placed along a roofline that are roughly half the height of a field shingle.  JA 320-21, 550, 556, 564.  It is common practice in the roofing industry to create starter shingles by removing the bottom portion of field shingles and using the remaining top portion of the field shingle as the starter shingle.  JA 550, 556, 564.

Atwood also makes the unsupported claim that because the Prior Patents were not a bar to the '493 Patent, they would not have been a bar to any patent application embodying Atwood's Sierra Rai Concept.  Atwood may be right, but such claims are without any evidentiary support and are pure conjecture because Atwood has never taken a single step toward securing a patent for his Concept.  This argument actually highlights Atwood's lack of damages, which is discussed in more detail, *infra*.

The Prior Patents are indisputable, concrete proof Atwood's Sierra Rai Concept of multiple adhesive points for shingles was <u>not</u> new, novel, or "secret." Rather, it was an idea contemplated, disclosed, and readily accessible to the roofing industry and the general public for at least <u>40 years</u> prior to the Disclosure Date. Without a "Trade Secret" or "Confidential Information" that could be protected or improperly disclosed by anyone, including CertainTeed, both claims fail.

### 4. Atwood's Admission Regarding CertainTeed's High Performance Starter Shingle Evidences Atwood's Sierra Rai Concept Was Known to the General Public Long Prior to the Disclosure Date

Atwood testified, under oath, that CertainTeed's High Performance Starter Shingle embodied his "Confidential Information," which he claims CertainTeed misappropriated. JA 346-48, 350-51. He further admitted <u>if</u> CertainTeed had sold this product <u>before</u> he disclosed his "Confidential Information" to CertainTeed, then, obviously, CertainTeed had <u>not</u> misappropriated his idea and this would defeat his claims. JA 349-50.

During discovery and again in support of CertainTeed's Motion, CertainTeed provided concrete, indisputable evidence it has been manufacturing and selling its High Performance Starter Shingle continuously for at least seven years <u>prior</u> to the Disclosure Date. JA 529, 545-70. CertainTeed's long-standing prior sales of that shingle are alone sufficient to negate any conceivable claim

CertainTeed improperly disclosed Atwood's Sierra Rai Concept. *See Sweet Street Deserts, Inc. v. Chudleigh's Ltd.*, No. 12-3363, U.S. Dist. LEXIS 49283, at *27-28 (E.D. Pa. Apr. 4, 2013) (prior product sales destroy confidentiality to ideas captured in the product). Atwood has admitted as much. JA 349-50.

Now, when confronted with uncontroverted and incontrovertible evidence the CertainTeed High Performance Starter Shingle was, in fact, sold long before the Disclosure Date to CertainTeed, Atwood attempts to forego this claim hoping it will somehow eradicate his admission. However, that Atwood is foregoing this particular claim does not change his sworn testimony. Atwood's testimony stands that the very "Confidential Information" he claims CertainTeed misappropriated is embodied in a product that was on sale years before he disclosed anything to CertainTeed. As such, it was not secret at the time of Disclosure and not a "Trade Secret" or "Confidential" under the NDA. This remains a valid fourth ground on which this Court should uphold Summary Judgment.

## G.    Atwood Has No Evidence of Damage or Any Other Recoverable Relief

The District Court did not address the fifth ground for Summary Judgment regarding Atwood's lack of damages. This Court is not constrained from considering this fifth ground in determining whether to uphold Summary Judgment.

Here, even if Atwood's Claims had any merit, (which they clearly do not), there is no evidence whatsoever Atwood suffered any damage as a result of any act of CertainTeed and Atwood is not entitled to any remedy claimed in his Complaint or available under the VUTSA or Pennsylvania Contract Law.  In his Complaint, Atwood demanded the following relief: (a) CertainTeed produce the original Exhibit 8 (Jenkins June 2008 Invention Notes)[11]; (b) Atwood's Actual Damages; (c) CertainTeed's Profits and the amount by which CertainTeed has been Unjustly Enriched; (d) "reasonable royalties;" (e) Punitive Damages; (f) Attorneys' fees; and (g) "appropriate Injunctive Relief."  JA  29-31.

## 1.    Atwood Has No Actual Damages

Actual damages are available under the VUTSA.  *See* Va. Code. 59.1-338(A).  It is Atwood's burden to establish what actual losses he sustained as a result of CertainTeed's alleged misconduct.  *See Autopartsource, LLC v. Bruton,* No. 3:13-cv-54, 2013 U.S. Dist. LEXIS 99396, at *16 (E.D. Va. July 16, 2013).  Similarly, under Pennsylvania Contract Law, Atwood must establish the existence of his actual losses he suffered as a result of CertainTeed's breach of the NDA, with evidence that demonstrates such actual losses with reasonable certainty.  *See*

---

[11] This requested relief is moot as Atwood, Atwood's Counsel, and two of Atwood's forensic document experts examined the original Exhibit 8 on two separate occasions.

*Ware*, 322 F.3d at 225 (while mathematical certainty is not required, sufficient facts are needed to determine the amount of damages without conjecture).

Atwood has <u>no</u> <u>evidence</u> he has been damaged by any act of CertainTeed. Atwood failed to engage any damages expert who might have helped identify or quantify any such damages. JA 410-13. Atwood has not been precluded from securing a U.S. Patent for the idea embodied in Atwood's Sierra Rai Concept because of any act of CertainTeed or the '493 Patent. In fact, he has not even attempted to file a Patent Application for his Concept. JA 357-60, 395-97. Atwood has made no effort to independently manufacture or sell a product embodying his Concept. JA 360-62, 398-99. CertainTeed never sold or produced a product embodying the invention set forth in its '493 Patent. JA 527-28.

Atwood has approached at least five other roofing product manufacturers about Atwood's Sierra Rai Concept. Yet, each and every company presented with this opportunity passed. None of these manufacturers and no other third party refused to talk with Atwood about his Concept because of CertainTeed or because of the '493 Patent. JA 398-99. No one refused to enter into a contract, license agreement, or joint development agreement with Atwood regarding his Concept because of CertainTeed or the '493 Patent. *Id.* Atwood cannot identify a single third party who stated the reason they would not manufacture, market, or sell a product embodying Atwood's Sierra Rai Concept was because CertainTeed

-59-

already had a patent for the idea or already had the same product on the market. *Id*.

Each and every company in the U.S. roofing industry who was presented with Atwood's Sierra Rai Concept has passed on the opportunity. Absent any market demand, Atwood's Sierra Rai Concept has no "independent economic value," which makes it incapable of being a "Trade Secret." Va. Code 59.1-336; *Trident Prods.*, 859 F. Supp. 2d at 778.

Accordingly, the incontrovertible evidenced demonstrates Atwood simply has not suffered any actual damages.

## 2.    CertainTeed Has Not Been Enriched In Any Way

Under the VUTSA, a plaintiff may recover defendant's profits, *i.e.*, the amount by which defendant has been unjustly enriched because of its alleged misappropriation. *See* Va. Code. 59.1-338(A); *see also Autopartsource, LLC*, 2013 U.S. Dist. LEXIS 99396, at *17.[12]

---

[12] Pennsylvania Contract Law prefers actual damages for breach of contract rather than disgorgement of profits. *See Fishkin v. Susquehanna Partners, G.P.*, No. 03-3766, 2007 U.S. Dist. LEXIS 19621, *8-12 (E.D. Pa. Feb. 12, 2007) (disgorgement of defendant's profits is not necessarily equivalent to the plaintiff's losses and compelling such "could give [a] plaintiff a windfall and penalize the defendant, neither of which serves the purpose of contract damages." citing *American Air Filter, Inc. v. McNichol*, 527 F.2d 1297, 1300 (3d Cir. 1975)).

Atwood essentially contended CertainTeed has been unjustly enriched in only two ways: (1) by the acquisition of the '493 Patent <u>and</u> (2) by sale of its High Performance Starter Shingle.  JA 23-25, 346-48, 350-51, 364-68.

The '493 Patent has <u>no</u> quantifiable monetary value.  CertainTeed has not profited one penny from the '493 Patent.  JA 527-28.  CertainTeed has not manufactured or sold a single product embodying the Invention in the '493 Patent. *Id*.  CertainTeed has no current plans to manufacture or sell any such product.  JA 528.   CertainTeed has not licensed the '493 Patent and no party has ever approached CertainTeed with an offer to purchase or license the '493 Patent.  *Id*. CertainTeed has not valued the '493 Patent and is not aware of any third party valuation of the same.  *Id*.  Nor has Atwood engaged any expert to value the '493 Patent.  JA 410-13.  There is no evidence to support any award of "profits" or "unjust enrichment" to Atwood based upon the '493 Patent.

The High Performance Starter Shingle has been on sale for at least seven years prior to the Disclosure Date.  JA 529, 545-70.  Atwood now admits he cannot be awarded a portion of CertainTeed's profits from the sale of a product that predates the Disclosure Date.  JA 349-50.

### 3.    There Can Be No "Reasonable Royalties" On Non-Existent Sales Of A Non-Existent Product

The VUTSA also provides a Trade Secret plaintiff may be awarded, as an alternative exclusive remedy, a "reasonable royalty."  *See* Va. Code 59.1-

338(A).  A reasonable royalty rate would be an approximation of the actual value of the infringed "secret," if both parties were reasonably trying to reach an agreement on an appropriate royalty.  *See Am. Sales Corp. v. Adventure Travel, Inc.*, 862 F. Supp. 1476, 1480 (E.D. Va. 1994).

There is no evidence of the value of Atwood's Sierra Rai Concept. Atwood has not commercialized it despite repeated efforts.  JA 357-62, 395-99. CertainTeed has not commercialized the '493 Patent in any way.  JA 527-28. Thus, there is no product on sale or to be sold for which a royalty could be awarded.

A royalty on the sales of CertainTeed's High Performance Starter Shingle makes no sense because such sales long predate the Disclosure Date of Atwood's Sierra Rai Concept and because Atwood has withdrawn his claim regarding this product.  JA 529, 545-70; DKT 13, pp. 27-28.  Finally, Atwood has not provided any expert analysis on what Atwood's Sierra Rai Concept might be worth or what a "reasonable royalty" under the circumstances might be.  JA 410-13.  Thus, there is no evidence whatsoever upon which any court could possibly award a "reasonable royalty."

### 4.      **Punitive Damages and Attorneys' Fees are Unavailable**[13]

Punitive Damages and Attorneys' Fees may be awarded under the VUTSA <u>only</u> if there was a misappropriation and it was willful and malicious.  *See* Va. Code 59.1-338(B), 59.1-338.1.  Atwood's Complaint failed to even allege CertainTeed acted in any willful or malicious manner.  JA 29.  Although Atwood reserved the right to make such allegation after his expert examined the original of Exhibit 8 (Jenkins June 2008 Invention Notes), he never sought to amend his Complaint to make such an allegation after having the Notes examined by two experts.  Absent such allegations or evidence to support them, there was and is no basis to provide Atwood with either remedy.

### 5.      **"Injunctive Relief" is <u>Not</u> Appropriate For a Concept That is No Longer Secret or Where Such Relief Runs Counter to Public Interest**

The VUTSA also provides a Court may provide "injunctive relief." *See* Va. Code 59.1-337.  Atwood plead for <u>un</u>specified "Injunctive Relief." However, no such relief is appropriate because Atwood's Sierra Rai Concept is no longer a "secret" (it never was) and because Atwood cannot demonstrate injunctive relief would be in the public's interest.

---

[13] Neither Pennsylvania Contract Law nor the NDA provide for recovery of either.  *See McShea v. The City of Philadelphia*, 995 A.2d 334, 340, n. 5 (Pa. 2010); *Staples v. Assurance Co. of Am.*, No. 1088, 2004 Phila. Ct. Com. Pl. LEXIS 50, *4-5 (Phila. Ct. Com. Pl. Jun. 14, 2004) (citing *Mosaica Academy Charter Sch. v. Commonwealth Dept. of Educ.*, 813 A.2d 813, 822 (Pa. 2002)); JA 32-38.

Injunctive relief is available under the VUTSA <u>only</u> while the alleged Trade Secret is still secret. *See* Va. Code. 59.1-337(A). Once the secret has been disclosed, an injunction may be continued for a reasonable period of time to eliminate any commercial advantage gained from the alleged misappropriation. *See id*.

Here, Atwood himself (through Counsel) disclosed Atwood's Sierra Rai Concept <u>both</u> to Owens Corning on a <u>non-confidential</u> basis and in his Complaint precipitating these proceedings. Assuming *arguendo*, the '493 Patent disclosed Atwood's Concept (which it does not), CertainTeed has <u>not</u> commercialized the '493 Patent in any way and has no plans to do so. Therefore, Atwood cannot argue CertainTeed has enjoyed a "commercial advantage" as a result of the '493 Patent that needs to be enjoined.

In fact, Atwood has never stated what he wants enjoined. Under such circumstances, this claim for relief is also waived. *See Mayfield*, 674 F.3d at 377.

Additionally, the balance of hardships and public interest do not favor the granting of injunctive relief. *See* Va. Code 59.1-337(A); *Autopartsource, LLC*, 2013 U.S. Dist. LEXIS 99396, at *36. The public interest would not favor enjoining CertainTeed's sale of its High Performance Starter Shingle, which Atwood contends embodies his Concept, since that product has been on public sale

since 2001, long prior to any date Atwood could claim as the earliest date he conceived of his Concept. JA 529, 545-70.

In sum, Atwood cannot prove he has been damaged or that CertainTeed has been enriched. Nor is there any evidence to support the imposition of a reasonable royalty, punitive damages, attorneys' fees, or injunctive relief in this case. Without evidence of damages, both of his claims fail and this remains a valid and independent basis for this Court to uphold the District Court's grant of Summary Judgment is appropriate.

## VI.   **CONCLUSION**

The undisputed evidence of record establishes Atwood's Sierra Rai Concept was not a secret on the Disclosure Date. The District Court did and this Court should rightfully conclude: (1) Atwood disclosed his Concept on a specific non-confidential basis to Owens Corning prior to the Disclosure Date; (2) the Invention in the '493 Patent was invented by CertainTeed on June 10, 2008 (four months prior to the Disclosure Date); (3) at least three published U.S. Patents contain the material elements of Atwood's Sierra Rai Concept and predate the Disclosure Date by years; and (4) the CertainTeed product which Atwood claims contains his Concept has been on sale for years prior to the Disclosure Date. This Court may also rightfully conclude Atwood had no damages and cannot establish any recoverable relief for his claims.

For the foregoing reasons, CertainTeed respectfully requests the District Court's granting of Summary Judgment to CertainTeed be upheld.


Dated:  July 24, 2014                     Respectfully submitted,

                                          /s/  M. Kelly Tillery
                                          M. Kelly Tillery, Esq.
                                          Sean P. McConnell, Esq.
                                          Pepper Hamilton LLP
                                          3000 Two Logan Square
                                          Eighteenth and Arch Streets
                                          Philadelphia, Pennsylvania 19103-2799
                                          Telephone: 215-981-4351
                                          Email: tilleryk@pepperlaw.com
                                          Telephone: 215-981-4401
                                          Email: mcconnells@pepperlaw.com
                                          Fax:  215-981-4252

                                          Matthew D. Foster (VA Bar No. 72130)
                                          PEPPER HAMILTON LLP
                                          Hamilton Square
                                          600 Fourteenth Street, N.W.
                                          Washington, D.C.  20005-2004
                                          Telephone:  202-220-1235
                                          Facsimile:  202-220-1665
                                          E-mail:  fosterm@pepperlaw.com

                                          *Counsel for Appellee,*
                                          *CertainTeed Corporation*

## UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)
Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

1.   This brief complies with the type-volume limitation of Fed. R. App. P.
     32(a)(7)(B) because:

        this brief contains <u>13,721</u> words, excluding the parts of the brief
        exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.   This brief complies with the typeface requirements of Fed. R. App. P.
     32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

        this brief has been prepared in a proportional spaced typeface using
        <u>Microsoft Word</u> in <u>14 point Times New Roman</u>.

                                   <u>/s/M. Kelly Tillery</u>
                                   M. Kelly Tillery

                                   *Counsel for Appellee*


Dated:  July 24, 2014

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on July 24, 2014, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

> Frederick D. Greco
> GRECO & GRECO, P.C.
> 1300 Old Chain Bridge Road
> McLean, VA  22101
> (703) 821-2777
>
> *Counsel for Appellant*

The necessary filing and service were performed in accordance with the instructions given to me by counsel in this case.

> /s/  Karen R. Taylor
> Karen R. Taylor
> GIBSON MOORE APPELLATE SERVICES, LLC
> 421 East Franklin Street
> Suite 230
> Richmond, VA  23219